**quinn emanuel** trial lawyers | boston

111 Huntington Avenue, Suite 520, Boston, Massachusetts 02199-7626 | TEL (617) 712-7100 FAX (617) 712-7200

WRITER'S DIRECT DIAL NO.
**(617) 712-7145**

WRITER'S EMAIL ADDRESS
**johnferraro@quinnemanuel.com**

May 27, 2025

<u>**VIA ECF**</u>
Hon. Denise J. Casper
U.S. District Court for the District of Massachusetts
One Courthouse Way
Boston, MA 02210

Re:    <u>Jetter *et al.* v. Boutique Tere, Inc. (d/b/a Marissa Collections) *et al.*,</u>
       <u>Case No. 1:25-cv-11491-DJC</u>

Your Honor:

    For the Court's convenience, Plaintiffs hereby file the original, color version of the Verified Complaint, which corresponds to the black-and-white photocopy filed at D.I. 1-1.

                    Very truly yours,

                    */s/ John F. Ferarro*
                    John F. Ferraro, Esq. (BBO# 711818)
                    QUINN EMANUEL URQUHART &
                    SULLIVAN, LLP
                    111 Huntington Avenue, Suite 520
                    Boston, MA 02199
                    617.712.7145 Direct
                    617.712.7100 Main Office Number

quinn emanuel urquhart & sullivan, llp

ABU DHABI | ATLANTA | AUSTIN | BEIJING | BERLIN | BOSTON | BRUSSELS | CHICAGO | DALLAS | HAMBURG | HONG KONG | HOUSTON | LONDON |
LOS ANGELES | MANNHEIM | MIAMI | MUNICH | NEUILLY-LA DEFENSE | NEW YORK | PARIS | PERTH | RIYADH | SALT LAKE CITY | SAN FRANCISCO |
SEATTLE | SHANGHAI | SILICON VALLEY | SINGAPORE | STUTTGART | SYDNEY | TOKYO | WASHINGTON, DC | WILMINGTON | ZURICH

#1

COMMONWEALTH OF MASSACHUSETTS

NANTUCKET, ss,

SUPERIOR COURT DEPARTMENT
OF THE TRIAL COURT

| | |
|---|---|
| KATHERINE JETTER and KATHERINE JETTER LTD. d/b/a THE VAULT NANTUCKET, <br><br> *Plaintiffs*, <br><br> v. <br><br> BOUTIQUE TERE, INC. d/b/a MARISSA COLLECTIONS, JAY HARTINGTON, MARISSA HARTINGTON, and BURT HARTINGTON, <br><br> *Defendants*. | Filed 05/19/2025 <br><br><br> Civil Action No. 2575CV00021 _____ |

## **VERIFIED COMPLAINT AND JURY DEMAND**

Plaintiffs Katherine Jetter and Katherine Jetter LTD (d/b/a The Vault Nantucket), by their undersigned attorneys, hereby file this Verified Complaint against Defendants Boutique Tere, Inc. (d/b/a Marissa Collections), Jay Hartington, Marissa Hartington, and Burt Hartington, and in support thereof, allege as follows:

# INTRODUCTION[1]

1.    In the exclusive world of luxury jewelry and accessories, Katherine Jetter has steadfastly built her business, reputation, vendor relationships, and clientele over years of hard work and success as a couture designer and retailer based on Nantucket, Massachusetts and in Boston, Massachusetts. In 2008, her debut year, Ms. Jetter received industry praise as a "Designer of the Year" by the Couture Trade Show's Jewelry Design Awards, a preeminent event in the industry, and she went on to open her boutique, The Vault Nantucket ("The Vault"), in 2017. In 2022, The Vault won *Boston Magazine's* "Best Fine Jewelry Award" for its annual Best of Boston series, and in 2023, Ms. Jetter's jewelry was featured by Oprah Winfrey on the front cover of her highly anticipated "Oprah's Favorite Things" issue.

2.    At The Vault, Ms. Jetter markets and sells her own jewelry line, high-end jewelry from other top designers and vendors in the industry, as well as apparel and accessories, and holds various trunk shows, events, and "pop-up" shops featuring luxury merchandise in an intimate and historic setting on the island. The Vault's business on Nantucket is a highly seasonal one, with high-season running annually from approximately May through October—correlating with Nantucket's warm weather months.

3.    Defendant Marissa Collections is a Florida-based corporation founded and owned by Defendants Marissa Hartington and Burt Hartington, with Defendant Jay Hartington as its CEO and now part-owner. Marissa Collections operates brick-and-mortar stores in Palm Beach and Naples, as well as an online store, that similarly features and sells luxury and high-end jewelry,

---

[1] Plaintiffs Ms. Jetter and Katherine Jetter LTD (d/b/a The Vault Nantucket) are referred to herein as "The Vault Parties" or "Plaintiffs." Defendants Boutique Tere, Inc. (d/b/a Marissa Collections), CEO Jay Hartington, and Founders Marissa Hartington and Burt Hartington are referred to herein as the "Marissa Collections Parties" or "Defendants."

apparel and accessories, and regularly hosts trunk shows, events, and pop-ups. ***Marissa Collections is a direct competitor of The Vault.*** Indeed, The Vault and Marissa Collections largely feature and sell the ***same*** jewelry designers' lines, work with the ***same*** vendors, have ***overlapping*** clientele, and market to the ***same*** target customer base.

4.    As detailed herein, the Marissa Collections Parties—in brazen violation of their contractual obligations—acquired and used The Vault's and Ms. Jetter's confidential business information and trade secrets for their own improper purpose: as free market research in a territory that was otherwise unfamiliar to them, and as a roadmap to open a competing store right in The Vault's own backyard—***just 0.2 miles away from The Vault***—despite Marissa Collections' agreement to not compete within a geographically limited 50-mile radius of The Vault's location.

5.    Specifically, when The Vault Parties and the Marissa Collections Parties were exploring a potential business partnership on Nantucket, as a condition of those discussions, the Marissa Collections Parties executed two binding contracts containing express confidentiality provisions and a narrowly-tailored non-competition clause, whereby Marissa Collections agreed to not compete with The Vault within a 50-mile radius of any of its locations. True and correct copies of the parties' agreements—which Marissa Collections' CEO Jay Hartington signed on April 14, 2023 and again on October 23, 2024—are attached hereto as Exhibits 1 & 2 (hereinafter, the "2024 Confidentiality & Non-Compete Agreement" and the "2023 Confidentiality & Non-Compete Agreement," respectively). Marissa Collections' CEO also assured Ms. Jetter that Marissa Collections would "never" independently operate a location on Nantucket without Ms. Jetter since Nantucket was her "territory."

6.    Based on these representations and express contractual protections, Ms. Jetter provided Defendants with The Vault Parties' confidential business and proprietary information

including, detailed sales data and forecasts, profit margin models and strategies, employee compensation details, seasonal revenue patterns, and various market analyses. This confidential and trade secret information, developed over years of on-the-ground entrepreneurial effort by Ms. Jetter, represented the competitive advantage that made The Vault successful in the exclusive and unique Nantucket market.

7.      However, unbeknownst to Ms. Jetter, Defendants had no intention of actually honoring their agreements or pursuing a transaction with The Vault in good faith. Instead, while Ms. Jetter was providing and entrusting Marissa Collections with her business's highly sensitive information, books & records, and strategies—the crown jewels of her business—Marissa Collections and its Founders and CEO were secretly scheming to establish their own competing store on Nantucket, now armed with The Vault's and Ms. Jetter's business information, providing a head start and unfair competitive advantage for their venture in a geographic area that was otherwise unfamiliar terrain to the Florida natives. And rather than honor their contractual obligations to return and destroy The Vault Parties' confidential information—as they were required to do under the Confidentiality & Non-Compete Agreements, and as Ms. Jetter has repeatedly requested—Marissa Collections and the Hartingtons have kept it all for themselves for an improper use. Tellingly, to this day, Defendants have refused to provide a certification of destruction of The Vault's confidential information.

8.      In the hands of a competitor like Marissa Collections, the confidential information and business strategies that the Marissa Collections Parties improperly acquired, retained, and used represents a significant and imminent threat, at present and into the future, to The Vault's and Ms. Jetter's business—especially now that Marissa Collections seeks to operate a brick-and-mortar

4

store just blocks away from The Vault during Nantucket's upcoming high-season, mere months after signing the non-compete.

9.      When Ms. Jetter unmasked Defendants' duplicity and confronted them with their deceit, she was met with flippant disregard: indeed, CEO Jay Hartington made clear that Marissa Collections had zero intent of abiding by the restrictions—the ones to which he agreed not once, but ***twice***, in binding signed contracts.

10.     Anxious that Ms. Jetter would present an obstacle to their scheme, Defendants unilaterally demanded that Ms. Jetter waive her rights under and release Marissa Collections from the Confidentiality & Non-Compete Agreements within less than 24 hours—or else. When Ms. Jetter did not capitulate to Defendants' threats, they escalated their unfair and deceptive tactics, refusing to return ***nearly $250,000*** of Ms. Jetter's jewelry inventory that they held on consignment at Marissa Collections' Palm Beach store—inventory they ***continue to wrongfully hold hostage to this day*** at an unknown location, despite Ms. Jetter's clear ownership rights, good faith requests for return of her property, and express representation that upon delivery, Ms. Jetter would promptly return Marissa Collections' associated $40,000 cash deposit via wire within seven (7) days. Defendants are not marketing or selling Ms. Jetter's jewelry—they have removed the jewelry from display in store and from their websites and are merely withholding it to further harm Ms. Jetter. Moreover, upon information and belief, Defendants were so determined to hold leverage over Ms. Jetter that when an employee at Marissa Collections returned a separate portion of Ms. Jetter's inventory that was being held at Marissa Collections' Naples store, that employee was swiftly fired for doing so.

11.     The culmination of Defendants' scheme came on May 9, 2025, when Marissa Collections announced for the first time the opening of a competing brick-and-mortar location at

1 Cambridge Street, Nantucket—*just 0.2 miles away from The Vault*—and comfortably within

the contractually prohibited 50-mile zone of the non-compete restriction:



Marissa Collections' Announcement of
2025 Store Opening on Nantucket (Ex. 3)



Distance between The Vault and Marissa Collections on Nantucket (Ex. 4)

True and correct copies of Marissa Collections' May 9, 2025 public Instagram announcement and

a map showing the distance between The Vault and Marissa Collections on Nantucket are attached

hereto as Exhibits 3 and 4, respectively.

12.     The timing, location, and business model of Marissa Collections' Nantucket store

evidences Defendants' intent all along to improperly leverage Ms. Jetter's confidential information

for use now and into the future to directly and unfairly compete against her business—all in

violation of the parties' operative 2024 Confidentiality & Non-Compete Agreement.

13.     Ms. Jetter therefore brings this action for injunctive relief and damages on behalf

of herself and her business to hold Defendants to their unequivocal contractual promises, to defend

herself against Defendants' unfair and deceptive conduct, which occurred primarily and

substantially in this Commonwealth, and to seek judicial intervention to prevent imminent and irreparable harm arising from Defendants' misconduct.

## PARTIES

14.     Plaintiff Katherine Jetter is a natural person, who is the owner and CEO of Katherine Jetter LTD (d/b/a The Vault Nantucket), and is domiciled and resides in Massachusetts.

15.     Plaintiff Katherine Jetter LTD (d/b/a The Vault Nantucket) is a Delaware corporation with a principal place of business on Nantucket, Massachusetts.

16.     Defendant Boutique Tere, Inc. is a Florida corporation that conducts, transacts, and does business in Massachusetts and Florida.  Defendant Boutique Tere, Inc. does business as Marissa Collections.

17.     Defendant Jay Hartington is a natural person, who is the CEO and partial-owner of Marissa Collections, and is domiciled and resides in Naples, Florida.  Mr. Hartington has directed, conducted and transacted business in the Commonwealth on behalf of Marissa Collections.

18.     Defendant Marissa Hartington is a natural person, who is the owner and founder of Marissa Collections, and is domiciled and resides in Naples, Florida.  Ms. Hartington has directed, conducted and transacted business in the Commonwealth on behalf of Marissa Collections.

19.     Defendant Burt Hartington is a natural person, who is the owner and founder of Marissa Collections, and is domiciled and resides in Naples, Florida.  Mr. Hartington has directed, conducted and transacted business in the Commonwealth on behalf of Marissa Collections.

## JURISDICTION AND VENUE

20.     The Court has jurisdiction over this action pursuant to M.G.L. c. 212, § 3, M.G.L. c. 214, § 1, and M.G.L. c. 231A.

21.     This Court has personal jurisdiction over each of the Defendants pursuant to M.G.L. c. 223A § 3. Defendants operate their business in the Commonwealth at 1 Cambridge Street,

Nantucket, Massachusetts; otherwise regularly transact and solicit business in the Commonwealth; and have caused and continue to cause injury to Plaintiffs in the Commonwealth. In addition, this action relates to the terms of the Confidentiality and Non-Compete Agreements between Plaintiffs and Defendants, which expressly provide that "[t]his agreement shall be governed by the laws of the Commonwealth of Massachusetts."

22.    Venue is proper in this Court pursuant to M.G.L. c. 223, § 1 and § 8. Plaintiffs' usual place of business is located on Nantucket, Massachusetts.

## STATEMENT OF FACTS

**I.    Katherine Jetter is a Designer and Retailer Who Founded Katherine Jetter Ltd. and The Vault on Nantucket.**

23.    Ms. Jetter is an acclaimed designer, gemologist, and visionary entrepreneur who has spent nearly two decades building her reputation, expertise, and career in the exclusive couture jewelry industry. In 2008, Ms. Jetter founded her own design and retail business, known as Katherine Jetter Ltd. Within the first year of launching her line, Ms. Jetter received high praise as one of just three nominees in the category of "Best New Designer to Couture Award" at the Couture Trade Show's Jewelry Design Awards, a preeminent event in the industry.

24.    In 2017, after many years of hard work and building her client and vendor base, Ms. Jetter took the transformative step of self-funding and opening The Vault—a sophisticated boutique located in the heart of downtown Nantucket, at 33 Centre Street, one of America's most exclusive and historic retail markets. The Vault is a premiere couture boutique, selling Ms. Jetter's own jewelry line, jewelry from a curated set of high-end designers in the industry, as well as apparel and accessories. In 2022, The Vault won *Boston Magazine's* "Best Fine Jewelry" award for its annual Best of Boston series.

25.     The Vault also hosts a variety of events, pop-ups, trunk shows, and private appointments featuring luxury merchandise in an intimate and historic setting on the island. These types of events represent an important part of The Vault's overall branding, marketing, business, visibility, and reach on Nantucket.

26.     Like most businesses on the island, The Vault's business is highly seasonal and therefore unique: the high-season—and therefore the most active sales period—runs between approximately May and October, annually, which corresponds with Nantucket's warm weather months. Accordingly, and particularly during the off-season, Ms. Jetter also operates her business and sees clients at her Boston-based showroom.

27.     Within the Nantucket community, Ms. Jetter has earned a reputation for her meticulous approach to sourcing investment-grade precious gemstones, her creative designs and overall styling services, her one-of-a-kind custom pieces, and her discerning eye in featuring other top designers' work and merchandise. In 2023, Ms. Jetter's jewelry was featured by Oprah Winfrey on the front cover of her highly anticipated "Oprah's Favorite Things" issue. Ms. Jetter takes tremendous pride in her team, her strategic and proprietary business and marketing plans, the relationships she has developed with designers and vendors, and the niche and unique market she has cultivated over time on Nantucket.

## II.    <u>Marissa Collections is a Florida-Based Luxury Retailer and The Vault's Direct Competitor.</u>

28.     Defendant Marissa Collections is a Florida-based corporation—owned and operated by Defendants Marissa Hartington, Burt Hartington, and Jay Hartington—with brick-and-mortar stores in Palm Beach and Naples, as well as an online store, that similarly markets and sells luxury and high-end jewelry, apparel and accessories. In 2022, Marissa Collections received

the GEM Award for Retail Excellence by the Jewelers of America, and is part of the Gemological Institute of America Alumni Association.

29.     Marissa Collections also regularly hosts trunk shows, themed events, pop-ups, and private styling appointments to market and sell luxury merchandise and high-end jewelry.  These types of trunk shows and events are a staple of Marissa Collections' business, which are heavily featured and advertised on Marissa Collections' public website and Instagram account.  At these events, Marissa Collections invites designers to bring their inventory (historically transported in trunks, hence the name) to their stores or another event venue for a limited time.  Marissa Collections coordinates and markets the events, promotes the inventory, and then earns a portion of the sales.  True and correct copies of a representative set of Marissa Collections social media posts on its Instagram account are attached hereto as <u>Exhibit 5</u>.

30.     Marissa Collections is a direct competitor of The Vault's.  Indeed, The Vault Nantucket and Marissa Collections largely feature and sell the same jewelry designers' lines, work with the same vendors, have overlapping clientele, and market to the same target customer base. True and correct copies of a representative set of The Vault's social media posts on its Instagram account are attached hereto as <u>Exhibit 7</u>.  Additionally, Marissa Collections markets itself as a jewelry retailer and the majority of its revenues come from jewelry sales.  Like The Vault, Marissa Collections places a heavy emphasis on its jewelry sales in its marketing, event hosting, and social media efforts.  *Compare* <u>Exhibits 5 & 7</u> (Representative samples from The Vault's and Marissa Collections' marketing demonstrating overlap between the same specific vendors, designers, marketing styles, and types of events).  And The Vault and Marissa Collections have a significant overlap in vendors, too:  In fact, ***over 80% of the designers*** currently carried by The Vault are also carried by Marissa Collections.  *See id.*

31.     As further detailed herein, Defendants Marissa and Burt Hartington are the Founders of Marissa Collections and drive the overall business strategy of the company, including opening a location on Nantucket.  Marissa Hartington is described as "the creative force" behind the stores, while Burt Hartington "anchors the business end of the operations;"[2] their son, Defendant Jay Hartington, is Marissa Collections' CEO, who is an experienced businessman and was previously an investment banker.  In addition to his responsibilities as CEO, Jay Hartington also spearheads Marissa Collections' jewelry sales and overall marketing,[3] and has been dubbed "The Face of Fine Jewelry" by local Naples and Palm Beach publications[4]:



32.     Jay Hartington has repeatedly described Marissa Collections as a "jewelry store masked as a clothing store" because the driving force of Marissa Collections' business is the

_____

[2]     "Who We Are," MARISSA COLLECTIONS, *available at* https://marissacollections.com/pages/who-we-are

[3]     *Id.*

[4]     "The Face of Fine Jewelry," NAPLES ILLUSTRATED & PALM BEACH ILLUSTRATED, *available at* https://www.palmbeachillustrated.com/the-face-of-fine-jewerly/; https://www.naplesillustrated.com/the-face-of-fine-jewelry/

jewelry. Indeed, it is public knowledge that jewelry sales account for the majority of Marissa Collections' revenue, approximately 60%, and that jewelry is therefore a key focus and primary business driver for Marissa Collections, including in connection with its various hosted events.

33.     Even a cursory review of Marissa Collections' social media posts reveals the centrality of Marissa Collections' marketing and sale of high-end jewelry at their stores, as complementary to other merchandise, as well as via various events, pop-ups and trunk shows. *See* Exhibit 5.

### III.     The Marissa Collections Parties Agreed to Not Compete With The Vault and To Protect The Vault Parties' Confidential Information In Exchange for Receipt of The Vault Parties' Proprietary Business Information.

34.     Ms. Jetter and the Hartingtons have had a working relationship for over fifteen years. Marissa Collections was one of the first independent retailers to feature and sell Ms. Jetter's jewelry line, and her designs were marketed and sold throughout the years at Marissa Collections' Naples and Palm Beach stores, its website, and at its trunk shows.

35.     Beginning in 2023, the parties began to explore a potential business partnership, and the Marissa Collections Parties expressed interest in expanding into the exclusive Nantucket market. But Marissa Collections only had stores in Florida and had no experience or knowledge about running a high-end store on the island, or about the unique sales, marketing and financial patterns on Nantucket that are impacted by the seasonality of the business. In contrast, Ms. Jetter already had an established foothold on Nantucket in the same exact market that the Hartingtons were seeking to enter.

36.     Under the guise of exploring a partnership—either a purchase of or merger with The Vault Nantucket—Jay Hartington made trips to Massachusetts to meet with Ms. Jetter and to

gather information about her operations, business and marketing strategies, financial information, books & records, location, and market clientele within the exclusive island community.

37.    At all relevant times, Ms. Jetter relied upon Defendants' and CEO Jay Hartington's representations that Marissa Collections had a genuine, good faith interest in a partnership with her business; she therefore made detailed disclosures to the Defendants and engaged in extensive discussions with Mr. Hartington.

38.    As a condition of and in exchange for The Vault Parties providing access to highly confidential and proprietary business information, CEO Jay Hartington—on behalf of himself and Marissa Collections—agreed to binding confidentiality and non-competition restrictions.  Indeed, Jay Hartington, who is a sophisticated and experienced business executive, signed **two contracts** agreeing not to compete with The Vault within a limited 50-mile radius of its location and to safeguard the confidentiality of The Vault's sensitive business information and trade secrets.  Exhibits 1 & 2.

39.    The restrictions are narrowly tailored for the protection of The Vault Parties' legitimate business interests and bound the Marissa Collections Parties to not compete within 50 miles of any of The Vault's locations.[5]  This 50-mile radius is reasonably tailored and limited in scope, encompassing Nantucket (but not even the entirety of Barnstable County):

- "**Recipient [Marissa Collections] _agrees not to compete with the Business within 50 miles_ of any location of the Business [The Vault].**"[6]

---

[5]    Plaintiffs have two locations: a brick-and-mortar store on Nantucket and a Boston showroom for appointments.  At issue is Defendants' opening of a store within the 50-mile radius of the Nantucket location.  However, the 2024 Confidentiality and Non-Compete Agreement prohibits competition "within 50 miles of **any location** of the Business," _see_ Exhibits 1-2 (emphasis added), and therefore also applies to a 50-mile radius from Plaintiffs' Boston location.

[6]    Exhibit 1 (operative 2024 Confidentiality & Non-Compete Agreement). _See also_ Exhibit 2 (2023 Confidentiality & Non-Compete Agreement with same language).

40.    As CEO, Jay Hartington signed the first contract on April 14, 2023 and the second on October 23, 2024, after discussions about the partnership renewed.  Defendants never sought to negotiate or change the terms of the agreements at any time.[7]

41.    Marissa Collections' CEO further represented to Ms. Jetter that Marissa Collections would "never" independently operate a location on Nantucket without Ms. Jetter since Nantucket was her "territory."

42.    The Marissa Collections Parties also agreed to maintain The Vault Parties' business information in strict confidence; to not improperly use or disclose that information; to return and destroy that information if the transaction was not pursued; and to not solicit The Vault's customers, vendors or employees, as reflected in the following provisions:

- "Recipient ***will not utilize, now or at any time in the future, proprietary information or trade secrets*** that are provided in any manner other than to evaluate a possible transaction with the Business."

- "Recipient ***will not*** utilize this information in the conduct of Recipient's or any other party's present or future business(es) or utilize it ***to enter into or compete with the Business*** or assist any other party to do so."

- "If Recipient decides not to pursue the proposed Transaction, Recipient will advise Owner of this fact and ***return to Owner all Information furnished to Recipient without keeping copies of it***."

- "***Recipient will not contact*** the Owner's employees, ***customers***, ***suppliers***, landlord or agents, for any reason whatsoever without the prior written consent of Owner."[8]

43.    The 2024 Confidentiality & Non-Compete Agreement further requires the Marissa Collections Parties to "indemnify" and "hold harmless" The Vault Parties for any and all claims, liabilities and damages, including those "arising from or relating to" wrongful conduct or a breach

---

[7] *Id.*

[8] *Id.* (emphases added).

14

of the agreement by the Defendants, and including reimbursement of attorneys' fees and expenses.[9]

The Marissa Collections Parties' promise not to compete is even repeated within this indemnification provision, further reflecting how critical this term was and leaving no doubt that the Marissa Collections Parties bear full liability for any and all damages resulting from their blatant violation of the restrictions therein:[10]

- "Recipient **agrees to indemnify, hold harmless and <u>not compete with Owner</u>**, including their respective agents, representatives, and employees **from and** against **any and all claims, liabilities, actions, causes of action, and damages, arising from or relating to any injury or loss attributed to actions, omissions, wrongful conduct or other breach** of this Agreement by Recipient, which indemnification shall include, without limitation, **reimbursement of attorney's fees and expenses** incurred by Owner in connection therewith."

44.     As Ms. Jetter told Jay Hartington, these non-competition and confidentiality terms were critical and necessary conditions to Ms. Jetter's decision to participate in detailed discussions about the potential partnership and to share her business's proprietary and confidential business information and strategies.   In reasonable consideration of the Marissa Collections Parties' unfettered access to The Vault's confidential information, Defendants agreed and warranted to be bound by the terms of their agreements.

45.     Relying on the Marissa Collections Parties' express commitments not to compete within 50 miles of The Vault's location or to misuse her confidential and proprietary information, Ms. Jetter provided a cache of highly sensitive information that Jay Hartington requested. Specifically, since the execution of the Confidentiality and Non-Compete Agreements, Ms. Jetter worked diligently and in good faith to provide Defendants with responses to their requests and Mr. Hartington's ever-increasing demands for The Vault's confidential and proprietary business

---

[9]   *Id.* (emphases added).

[10]    *Id.* (emphases added).

information, including: The Vault's detailed sales forecasts; gross revenue and gross profits analyses; profit & loss statements; metrics regarding cost of goods; sales projections and business valuations; business strategy plans, including Ms. Jetter's methodology for managing operating margins in the luxury item industry; vendor lists and associated information; compilations of historical sales data; detailed information regarding employee salaries and compensation, seasonal compensation, staff housing, and benefits; data regarding public relations and advertising costs; data regarding commissions; data regarding insurance, shipping, and repair costs and terms; detailed tax information, among other things.

46.     The Vault Parties' confidential and proprietary information has significant value and would provide a competitor like Marissa Collections with a distinct and improper economic advantage, including a roadmap and an unfair competitive edge, with a head start in a unique market on Nantucket.  Indeed, Defendants obtained not just operational details about The Vault's business, but comprehensive financial and business analyses that included *multi-year* data.  This type of information is therefore of *present and future value* to a competitor like Marissa Collections, and remains competitively valuable and sensitive for multiple seasonal cycles. Marissa Collections' improper acquisition and use of The Vault's information will therefore cause irreparable harm, and enforcement of the non-compete as written, or for a period of at least three years, is necessary to protect Plaintiffs' legitimate business interests.

47.     The Vault Parties have maintained these documents and information in strict confidence and have taken reasonable precautions to protect them, including by only permitting a small group of individuals access on a strictly need-to-know basis, requiring confidentiality agreements that prohibit the use or disclosure of the information, implementing technological safeguards to maintain secrecy, and using password protections.

48.     Simply put, Ms. Jetter **never** would have provided her business's most sensitive information, trade secrets, financials, and business models without legal assurances that Marissa Collections could not improperly use it and open its own store on Nantucket and compete with her.  But that is exactly what the Marissa Collections Parties did.

IV.     **Unbeknownst to The Vault Parties, The Hartingtons and Marissa Collections Were Working Behind the Scenes to Open Their Own, Competing Business Mere Blocks Away from The Vault on Nantucket.**

49.     While Ms. Jetter entered discussions with the Marissa Collections Parties in good faith, the Hartingtons and Marissa Collections did not.  After saddling Ms. Jetter with requests for her sensitive business information over several months in 2024 and into 2025, stringing her along under the pretense of exploring a collaboration, the Defendants ultimately refused to realistically and cooperatively engage with Ms. Jetter on the terms of the so-called partnership they had claimed they were interested in.

50.     Having received The Vault Parties' confidential and proprietary information, the Marissa Collections Parties had what they needed:  free market research into the unique Nantucket luxury market and a head-start roadmap to open their own competitive venture.  As Ms. Jetter would later learn, behind the scenes, Jay Hartington, Marissa Hartington, and Burt Hartington were plotting to enter the Nantucket market on their own—armed with The Vault's proprietary and confidential business information, which enabled them to accelerate entrance onto the island and to improperly and unfairly compete.

51.     Indeed, throughout 2024 and early 2025, while pretending to be evaluating a transaction with The Vault Parties, CEO Jay Hartington was actually engaged in clandestine negotiations with at least two Nantucket-based real estate brokerages to secure a lease for a commercial space for Marissa Collections to open a competing store—just months after executing

the Confidentiality and Non-Compete Agreement in October 2024. Upon information and belief, Marissa Hartington and Burt Hartington participated in those business decisions, directed and coordinated various logistics, and were involved in meetings, negotiations and plans for the Nantucket store, including house rentals for staff and inventory decisions in the Commonwealth.

52.     Ms. Jetter was stunned to find out about Defendants' underhanded conduct. When she confronted Jay Hartington in January 2025 and reminded him of his contractual commitments, he brazenly indicated the restrictions to which he *twice* agreed had no import, resorted to threats, and as detailed further below, has improperly held hostage Ms. Jetter's high-value jewelry inventory for months and months. Additionally, in a blatant display of extortionist conduct, Jay Hartington even threatened to sue Ms. Jetter for so-called "tortious interference" claims if she did not capitulate to his demands; for example, on January 16, 2025, Mr. Hartington demanded that Ms. Jetter—within less than 24 hours—fully release him from his contractual commitments and to waive all of her rights under the 2024 Confidentiality & Non-Compete Agreement.

53.     Tellingly, rather than honor their contractual obligations to physically return and destroy The Vault Parties' confidential information—as required under the Confidentiality & Non-Compete Agreements, and as Ms. Jetter has repeatedly requested—Marissa Collections and the Hartingtons have improperly acquired, retained, and used it. To this day, Defendants have refused to provide a signed certification of the destruction of The Vault Nantucket's confidential information. Given their ongoing possession of The Vault's valuable business information and trade secrets, the Marissa Collections Parties are uniquely positioned to continue to usurp The Vault Parties' customer and vendor goodwill, now and into the future, causing significant and irreparable harm to Plaintiffs.

54.    Culminating the Marissa Collections Parties' bait-and-switch scheme—in flagrant violation of the non-compete and while still fully armed with The Vault Nantucket's confidential information and trade secrets—on May 9, 2025, Marissa Collections announced it was imminently opening a store right in downtown Nantucket:



*Marissa Collections' Announcement of
2025 Store Opening on Nantucket (Exhibit 3)*

19

55.     Marissa Collections' Nantucket store is a textbook violation of the binding non-competition agreement, with a limited 50-mile geographic scope.  Marissa Collections has set up shop in The Vault's own backyard—*a mere 0.2 miles away from The Vault*—in a blatant attempt to hijack the very market and territory Marissa Collections promised not to enter:



*Distance between The Vault and Marissa Collections (Exhibit 4)*

56.     Upon information and belief, the Marissa Collections Parties plan to operate their store at the 1 Cambridge Street location during peak sales season from at least June 2025 through the fall of this year (including holding events, trunk shows, and pop-ups), and have plans to thereafter open a permanent brick-and-mortar store on Nantucket, within a 50-mile radius of The Vault's boutique.

57.     The Marissa Collections Parties' plan to open a retail store during Nantucket's high season apparently has been in the works for some time, including by entering into the lease at 1 Cambridge Street for a retail location in or about March 2025, and by submitting its "Application to Historic District Commission, Nantucket, Massachusetts for Certificate of Appropriateness for Erection or Display of a Sign" on or about April 28, 2025.  A true and correct copy of the Application is attached hereto as Exhibit 6.

58.     The Vault is scheduled to open its doors this season on May 23, 2025, and as always, will host a variety of events, trunk shows, and pop-ups. *See* <u>Exhibit 7</u> at 1.

59.     There is no question that Marissa Collections directly competes with The Vault, which is precisely why Ms. Jetter required Marissa Collections to sign binding confidentiality and non-competition agreements <u>before</u> sharing her trade secrets and sensitive business strategies. This retained information provides the Marissa Collections Parties with an ongoing and blatantly unfair competitive advantage—one that is derived ***directly*** from their contractual breaches and misconduct, and which will irreparably harm Plaintiffs.

60.     The selection of Marissa Collections' location on Nantucket and the lightning speed timing of the store opening—during Nantucket's high-season—is no coincidence; rather, it is the calculated result of the Marissa Collections Parties' breaches, misconduct, and unfair and deceptive gamesmanship, aimed and executed primarily and substantially in the Commonwealth.

## V.     <u>Marissa Collections Holds Hundreds of Thousands of Dollars' Worth of Plaintiffs' Inventory Hostage In an Effort to Intimidate Ms. Jetter and Tortiously and Unfairly Interfere With Her Business.</u>

61.     To make matters worse, when Ms. Jetter refused to acquiesce to Marissa Collections' transparent and aggressive efforts to intimidate her as an independent business owner, the Marissa Collections Parties escalated their tactics by withholding substantial payments to Ms. Jetter of past jewelry sales in their stores and by improperly holding hostage ***hundreds of thousands of dollars*** of her jewelry inventory—inventory that Marissa Collections is no longer marketing or selling itself, and yet refuses to return, with no legal basis, ***to this day***.

62.     For years, Marissa Collections has sold Ms. Jetter's jewelry line via what is referred to as a "consignment arrangement." Consignment arrangements are standard in the couture jewelry industry. Unlike traditional retail where a company purchases inventory outright and then

sells it, under a consignment agreement, ***Ms. Jetter retains ownership of her jewelry*** at all times. Marissa Collections does not purchase or pay for the jewelry, but simply takes temporary possession of it to display, market, and sell it. If Marissa Collections sells one of Ms. Jetter's jewelry pieces to a customer, then it must pass through the sale proceeds to Ms. Jetter, deducting a commission. At all times, however, the jewelry legally belongs to Ms. Jetter—not Marissa Collections—and Ms. Jetter can therefore request its return. *See* <u>Exhibit 8</u> at 3 (reflecting that title remains with Plaintiff Katherine Jetter Ltd. and inventory "is to be returned to me on demand"). Indeed, vendors frequently request return of specific inventory items on consignment throughout the course of a consignment relationship, either as part of their own inventory management, to make a sale directly to their own customers, or upon terminating the consignment relationship. These requests are referred to as "return-to-vendors," or "RTVs."

63.     Marissa Collections continues to hold hundreds of thousands of dollars of Ms. Jetter's jewelry at their Naples and Palm Beach locations and also owes her $18,299.85 for past sales of her jewelry. Following standard RTV practice, Ms. Jetter repeatedly requested that her inventory be returned to her, provided Marissa Collections with pre-paid shipping labels multiple times, and verified that she would return the deposit she held from Marissa Collections via wire transfer upon receipt of her jewelry.[11] Ms. Jetter even had one of her employees go to Marissa Collections' Palm Beach store to retrieve the unreturned inventory, but Marissa Collections refused to help or to return the jewelry and represented to Ms. Jetter's employee that the jewelry had been sent to some other unknown location. To this day, and despite having no active vendor

---

[11] Because consignment arrangements require vendors to provide temporary possession of their inventory, vendors often receive a deposit to serve as collateral. Here, Ms. Jetter held a $40,000 deposit from Marissa Collections—far less than the value of her inventory in Marissa Collections' possession.

relationship in place, the Marissa Collections Parties have outright refused to return Ms. Jetter's inventory to her—which has continued to deprive her of those sales and has negatively impacted her revenue stream.

64.     Upon information and belief, in February 2025, when a Marissa Collections employee of nearly thirteen years followed standard RTV practices and shipped back a separate portion of Ms. Jetter's jewelry upon receiving the return request, CEO Jay Hartington flew off the handle and fired the long-time employee for disrupting his apparent scheme to hold leverage over Ms. Jetter.   Indeed, Jay Hartington specifically instructed Marissa Collections employees that **under no circumstances** could they return the remainder of Ms. Jetter's jewelry inventory to her, falsely claiming that she would not pay back the deposit—despite the fact that Ms. Jetter unequivocally owns the jewelry, is rightfully entitled to its return, and confirmed that she would wire the deposit funds promptly.

65.     Notwithstanding repeated requests for the return of her inventory—which represents unique and rare pieces—and as reflected in the itemized inventory report attached hereto as Exhibit 8, the Marissa Collections Parties continue to unlawfully hold **approximately $250,000** (in retail value) of Ms. Jetter's jewelry, in addition to withholding $18,299.85 due to Ms. Jetter for jewelry sold.  Exhibit 9 (Invoices from Ms. Jetter to Marissa Collections).

66.     Defendants are not marketing or selling Ms. Jetter's jewelry—in fact, in the midst of their scheme they removed her jewelry from display in-store and from their websites.  *See* Exhibit 10 (**March 2025** version of Marissa Collections' Website including Ms. Jetter and her jewelry *versus* **current May 2025** website from which Ms. Jetter and her jewelry have been removed).

67.     Indeed, as the Marissa Collections Parties know and intend, their unlawful conversion has prevented Ms. Jetter from displaying, marketing and selling these various unique pieces of jewelry, heading into the peak Nantucket retail season, causing a direct impact to her business and revenue stream during a critical period.  Indeed, Ms. Jetter has already been deprived of the opportunity to make those sales in the ordinary course of her business, including for key holidays such as Valentine's Day and Mother's Day.  Defendants have no grounds to hold hostage Ms. Jetter's property; they are simply withholding her inventory to further harm Ms. Jetter and her business—their direct competitor.

*   *   *

68.     At a minimum and as further detailed in Plaintiffs' accompanying Motion for Temporary Restraining Order and Preliminary Injunction, injunctive relief prohibiting Defendants from opening and operating Marissa Collections on Nantucket (for a minimum period of three years) is necessary to enforce the 2024 Confidentiality & Non-Compete Agreement and to protect The Vault Parties' legitimate business interests.  Plaintiffs also seek injunctive relief restraining Defendants from further accessing, using or disclosing any of Plaintiffs' confidential information and trade secrets, and requiring Defendants to return to Plaintiffs' their property, including Plaintiffs' jewelry inventory and all of Plaintiffs' confidential information and trade secrets.

69.     Additionally, Plaintiffs are entitled to and intend to pursue all monetary damages caused by Defendants' misconduct, as well as all attorneys' fees and expenses.

## COUNT I

## BREACH OF CONTRACT – NON-COMPETITION

70.     Plaintiffs incorporate by reference the allegations in the above paragraphs as if fully set forth herein.

71.    The 2024 Confidentiality & Non-Compete Agreement is a valid and enforceable contract with consideration, as described above.

72.    Katherine Jetter LTD (d/b/a The Vault Nantucket) fully performed all obligations under the 2024 Confidentiality and Non-Compete Agreement.

73.    In the 2024 Confidentiality & Non-Compete Agreement, Defendants agreed "not to compete with the Business within 50 miles of any location of the Business." The 2024 Confidentiality & Non-Compete Agreement further states: "Recipient agrees to indemnify, hold harmless and not compete with Owner …" Defendants further agreed to indemnify Plaintiffs for any damages or losses related to breach of the 2024 Confidentiality & Non-Compete Agreement (which would include breach of the non-competition restriction), and/or related to their other actions or omissions, and expressly agreed to reimburse Plaintiffs for any attorneys' fees and expenses incurred in addition to damages.

74.    As described above, Defendants breached the 2024 Confidentiality & Non-Compete Agreement by establishing a competing business approximately 0.2 miles from Katherine Jetter LTD (d/b/a The Vault Nantucket), well within the 50-mile radius prohibited by the agreement.

75.    As a direct and proximate result of Defendants' breach, Plaintiffs have suffered and will continue to suffer irreparable injury and substantial damages.

## <u>COUNT II</u>

### <u>BREACH OF CONTRACT – CONFIDENTIALITY</u>

76.    Plaintiffs incorporate by reference the allegations in the above paragraphs as if fully set forth herein.

77.    The 2024 Confidentiality & Non-Compete Agreement is a valid and enforceable contract with consideration, as described above.

78.     Katherine Jetter LTD (d/b/a The Vault Nantucket) fully performed all obligations under the 2024 Confidentiality & Non-Compete Agreement.

79.     In the 2024 Confidentiality & Non-Compete Agreement, Defendants agreed that: "Recipient will not utilize, now or at any time in the future, proprietary information or trade secrets that are provided in any manner other than to evaluate a possible transaction with the Business. Recipient will not utilize this information in the conduct of Recipient's or any other party's present or future business(es) or utilize it to enter into or compete with the Business or assist any other party to do so." Defendants further agreed that: "If Recipient decides not to pursue the proposed Transaction, Recipient will advise Owner of this fact and return to Owner all Information furnished to Recipient without keeping copies of it," and that "Recipient will not contact the Owner's employees, customers, suppliers, landlord or agents, for any reason whatsoever without the prior written consent of Owner." Defendants further agreed to indemnify Plaintiffs for any damages or losses related to breach of the 2024 Confidentiality & Non-Compete Agreement (which would include breach of the confidentiality provisions), and/or related to their other actions or omissions, and expressly agreed to reimburse Plaintiffs for any attorneys' fees and expenses incurred in addition to damages.

80.     As described above, Defendants breached the 2024 Confidentiality & Non-Compete Agreement by retaining, utilizing, misappropriating, misusing, and/or disclosing Plaintiffs' confidential and proprietary information and trade secrets to establish a competing business to Defendants' benefit. Defendants also breached the Agreement by failing to return such information Ms. Jetter furnished to Defendants.

81.     As a direct and proximate result of Defendants' breach, Plaintiffs have suffered and will continue to suffer irreparable injury and substantial damages.

## COUNT III

## BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

82.    Plaintiffs incorporate by reference the allegations in the above paragraphs as if fully set forth herein.

83.    The 2024 Confidentiality & Non-Compete Agreement is a valid and enforceable contract.

84.    Under Massachusetts law, a covenant of good faith and fair dealing is implied in every contract. Defendants were required to act in good faith and deal fairly with Plaintiffs in the performance of the 2024 Confidentiality & Non-Compete Agreement.

85.    Defendants breached the implied covenant of good faith and fair dealing by undertaking the actions as detailed herein, including: Defendants unfairly attempted to secure an undue economic advantage at Plaintiffs' expense, acted in bad faith contrary to the intended and agreed-upon expectations under the Agreement, and injured Plaintiffs' right to reap the benefits provided by the contractual terms.

86.    As a result of Defendants' breach of the implied covenant of good faith and fair dealings, Plaintiffs have suffered and will continue to suffer irreparable injury and substantial damages.

## COUNT IV

## TORTIOUS INTERFERENCE

87.    Plaintiffs incorporate by reference the allegations in the above paragraphs as if fully set forth herein.

88.    Defendants have tortiously interfered with Plaintiffs' business relationships and contracts with its vendors and customers, of which Defendants are fully aware.

89.     Defendants' tortious interference with business relationships and contracts is intentional: Defendants have engaged in an effort to interfere with Plaintiffs' business via both improper motive and means, including via Defendants' misrepresentations to Plaintiffs and to Plaintiffs' customers and vendors, Defendants' misuse of Plaintiffs' confidential business information, and Defendants' illegal conversion of and refusal to return Plaintiffs' valuable inventory in order to prevent and interfere with Plaintiffs' sales—all during what Defendants are well aware is Plaintiffs' most active sales season.

90.     As a result of Defendants' tortious interference, Plaintiffs have suffered and will continue to suffer irreparable injury and substantial damages.

## COUNT V

### UNFAIR AND DECEPTIVE TRADE PRACTICES
### IN VIOLATION OF M.G.L. c. 93A

91.     Plaintiffs incorporate by reference the allegations in the above paragraphs as if fully set forth herein.

92.     At all times relevant to this action, Defendants were engaged in trade or commerce within the Commonwealth of Massachusetts and within the meaning of M.G.L. c. 93A, § 11 and § 2.

93.     Defendants' unfair and deceptive practices occurred primarily and substantially in the Commonwealth of Massachusetts.  Additionally, Defendants' unfair and deceptive practices caused harm that was primarily and substantially felt by Plaintiffs in the Commonwealth of Massachusetts, where The Vault Nantucket is located.

94.     As detailed herein, Defendants engaged in unfair competition and unfair and deceptive conduct, with an improper motive, and with the intent to secure unfair commercial benefits. Defendants' violation of Ch. 93A includes, a minimum, making serial, bad faith

misrepresentations to Plaintiffs, stringing Plaintiffs along while obtaining confidential information regarding Plaintiffs' business under false and deceptive pretenses; misusing and retaining that confidential and proprietary information to Defendants' benefit; intentionally and in bad faith breaching the 2024 Confidentiality & Non-Compete Agreement as well as the implied covenant of good faith therein; tortiously interfering with Plaintiffs' advantageous business relationships and contracts; refusing with no legal basis to return Plaintiffs' property and illegally continuing to possess that property; withholding payment due to Plaintiffs for sales of Plaintiffs' jewelry on consignment—all to Plaintiffs' harm and to Defendants' benefit.

95.     Defendants engaged in this pattern of unfair and deceptive conduct knowingly and willfully.

96.     As a result of Defendants' conduct, Plaintiffs have suffered and will continue to suffer irreparable injury and substantial damages.

97.     Plaintiffs are entitled to treble damages, reasonable attorneys' fees, costs, and interest in an amount to be determined at trial.

## **COUNT VI**

## **MISAPPROPRIATION OF TRADE SECRETS**
## **IN VIOLATION OF M.G.L. C. 93, §§ 42 - 42G**

98.     Plaintiffs incorporate by reference the allegations in the above paragraphs as if fully set forth herein.

99.     Defendants used improper means to misappropriate Plaintiffs' trade secrets including but not limited to: detailed sales forecasts; gross revenue and gross profits analyses; profit & loss statements; cost of goods details; projections and business valuations; business strategy plans, including with respect to managing operating margins in the luxury item industry; vendor lists and information; compilations of historical sales data; detailed information regarding

employee salaries and compensation, seasonal compensation, and staff housing and benefits; data

regarding public relations and advertising costs; data regarding commissions; and data regarding

insurance, shipping, and repair costs and terms; and detailed tax information.

100.    This information constitutes protectable trade secrets pursuant to M.G.L. c. 93, §§

42 to 42G.  Plaintiffs' trade secrets derive independent economic value, actual or potential, from

not being generally known to, and not being readily ascertainable through proper means by,

another person or business who can obtain economic value from the disclosure or use of that

information.

101.    Plaintiffs have taken reasonable measures to protect the confidentiality of these

trade secrets. As described above, Plaintiffs require confidentiality agreements prohibiting the use

or disclosure of such trade secrets and have policies in place designed to protect those trade secrets.

102.    Plaintiffs disclosed the trade secrets to Defendants in confidence and pursuant to a

duty to maintain such information in confidence. Plaintiffs did not consent to Defendants'

misappropriation, use, and disclosure of such trade secrets for any purpose other than evaluating a

partnership with Plaintiffs, as stated in the 2024 Confidentiality & Non-Compete Agreement.

103.    Defendants Jay Hartington, Marissa Hartington, and Boutique Tere, Inc. are each

directly liable for misappropriation of trade secrets for their use of improper means to acquire

knowledge of Plaintiffs' trade secrets and for their knowing benefit from the misappropriation.

Marissa Hartington and Burt Hartington are additionally liable pursuant to M.G.L. c. 93, §

42(2)(B): Marissa Hartington and Burt Hartington knew or had reason to know that Plaintiffs'

trade secrets were derived from or though Jay Hartington and Boutique Tere, Inc.'s improper

means; the trade secrets were acquired under circumstances giving rise to a duty to limit their

acquisition, disclosure, or use; and/or the trade secrets were derived from or through parties who owed a duty to limit their acquisition, disclosure, or use.

104.    As a result of Defendants' conduct, Plaintiffs have suffered and will continue to suffer irreparable injury and substantial damages.

105.    Defendants' misappropriation of Plaintiffs' trade secrets was conducted through willful and malicious conduct, entitling Plaintiffs to attorneys' fees and exemplary damages. M.G.L. c. 93, § 42B(b).

<u>**COUNT VII**</u>

**MISAPPROPRIATION OF CONFIDENTIAL BUSINESS INFORMATION**

106.    Plaintiffs incorporate by reference the allegations in the above paragraphs as if fully set forth herein.

107.    Defendants misappropriated Plaintiffs' confidential business information, including but not limited to: detailed sales forecasts; gross revenue and gross profits analyses; profit & loss statements; cost of goods details; projections and business valuations; business strategy plans, including with respect to managing operating margins in the luxury item industry; vendor lists and information; compilations of historical sales data; detailed information regarding employee salaries and compensation, seasonal compensation, and staff housing and benefits; data regarding public relations and advertising costs; data regarding commissions; and data regarding insurance, shipping, and repair costs and terms; and detailed tax information.

108.    Plaintiffs have taken reasonable measures to protect the confidentiality of its confidential information. As described above, Plaintiffs require confidentiality agreements prohibiting the use or disclosure of such trade secrets and have policies in place designed to protect those trade secrets.

109.    Plaintiffs disclosed the confidential information to Defendants in confidence and pursuant to a duty to maintain such information in confidence. Plaintiffs did not consent to Defendants' use and disclosure of such information for any purpose other than evaluating a partnership with Plaintiffs, as stated in the 2024 Confidentiality & Non-Compete Agreement.

110.    As a result of Defendants' conduct, Plaintiffs have suffered and will continue to suffer irreparable injury and substantial damages.

## COUNT VIII

### CONVERSION

111.    Plaintiffs incorporate by reference the allegations in the above paragraphs as if fully set forth herein.

112.    Plaintiffs are the rightful owner of valuable inventory held with a manufacturer's suggested retail value of approximately $250,000, held with no legal basis by Defendants.

113.    In addition, as described herein, Defendants have converted at least $18,299.85 owed to Plaintiffs for past sales of her jewelry.

114.    As described herein, Plaintiffs provided Defendant with temporary possession of such inventory on a consignment basis to act as a vendor of such jewelry in Defendants' Florida stores.

115.    Plaintiffs terminated the consignment arrangement with Defendants and demanded return of Plaintiffs' property.  However, Defendants have wrongfully exercised dominion and control over the property and refused to return it.

116.    Defendants' actions are inconsistent with Plaintiffs' ownership rights and constitute conversion under Massachusetts law.

117.    As a result of Defendants' conversion, Plaintiffs have suffered and will continue to suffer irreparable injury and substantial damages.

## COUNT IX

### UNJUST ENRICHMENT

118.    Plaintiffs incorporate by reference the allegations in the above paragraphs as if fully set forth herein.

119.    Defendants are knowingly and unjustly benefitting from Plaintiffs' confidential and proprietary information and trade secrets, as well as Plaintiffs' inventory, which Defendants refused to return to Plaintiff.  Defendants have also been unjustly enriched by the profits they refuse to provide Plaintiffs for the sales of Plaintiffs' jewelry.

120.    Defendants have been enriched as a result of their unjust and unconscionable misconduct and it would inequitable for Defendants to retain such benefits.

121.    In addition to the other relief and damages sought herein, Plaintiffs are entitled to an award equal to the amount of such unjust enrichment, including all equitable relief available such as disgorgement or return of benefits wrongfully misappropriated.

## COUNT X

### DECLARATORY JUDGMENT

122.    Plaintiffs incorporate by reference the allegations in the above paragraphs as if fully set forth herein.

123.    An actual controversy has arisen regarding the 2024 Confidentiality & Non-Compete Agreement.

124.    Plaintiffs' position is that the 2024 Confidentiality & Non-Compete Agreement is valid and enforceable under Massachusetts law. Upon information and belief, Defendants dispute all or part of this position.

125.    All parties necessary for a determination of their respective rights have been joined.

126.     Plaintiffs are entitled to a judicial determination that the 2024 Confidentiality & Non-Compete Agreement is valid and enforceable under Massachusetts law.

## **REQUESTED RELIEF**

WHEREFORE, Plaintiffs respectfully requests that this Court:

127.     Enter judgment in favor of Plaintiffs and against Defendants on all counts;

128.     Grant equitable relief, including in the form of an injunction prohibiting Defendants from breaching the 2024 Confidentiality & Non-Compete Agreement, from acquiring, using and/or disclosing Plaintiffs' trade secrets and/or confidential information, and from continuing to possess Plaintiffs' inventory as described herein;

129.     Enter a declaratory judgment that the 2024 Confidentiality & Non-Compete Agreement is valid and enforceable;

130.     Award Plaintiffs damages in an amount to be determined at trial (including treble damages), plus pre-judgment and post-judgment interest at the maximum rate permitted by law;

131.     Award Plaintiffs all costs, expenses, and attorneys' fees; and

132.     Grant such other and further relief as this Court deems just and proper.

## **JURY TRIAL DEMAND**

133.     Plaintiffs hereby demand a jury trial.

Respectfully submitted,

KATHERINE JETTER and
KATHERINE JETTER LTD. d/b/a THE
VAULT NANTUCKET

By their attorneys,

_____
Aliki Sofis (BBO# 675777)
Kathleen Marini (BBO# 698420)
John F. Ferraro (BBO# 711818)
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
111 Huntington Avenue, Suite 520
Boston, MA 02199
(617) 712-7100
alikisofis@quinnemanuel.com
kathleenmarini@quinnemanuel.com
johnferraro@quinnemanuel.com

Dated:  May 19, 2025

## **VERIFICATION**

I, Katherine Jetter, on behalf of myself and Katherine Jetter Ltd. d/b/a The Vault Nantucket,

verify that the foregoing recitation of facts. other than allegations made upon information and

belief, are true and correct based on my personal knowledge and belief, and I hereby swear under

the pains and penalties of perjury that all of those facts are true and accurate to the best of my

knowledge.


SIGNED UNDER THE PAINS AND PENALTIES OF PERJURY
THIS _19_ DAY OF MAY 2025.


Katherine Jetter
*On behalf of Katherine Jetter and*
*Katherine Jetter Ltd. d/b/a The Vault Nantucket*

## <u>CERTIFICATE OF SERVICE</u>

I, John F. Ferraro, hereby certify that on May 19, 2025, I caused the foregoing document

to be served via email upon counsel for Defendants:

Lawrence G. Horsburgh (Massachusetts BBO # 679997)
Gunster, Yoakley & Stewart, P.A.
450 East Las Olas Boulevard, Suite 1400
Ft. Lauderdale, FL 33301
lhorsburgh@gunster.com

M. Travis Hayes, Esq.
Gunster, Yoakley & Stewart, P.A.
5551 Ridgewood Drive
Naples, FL 34108
thayes@gunster.com

*Counsel for Defendants*

/s/ *John F. Ferraro*
John F. Ferraro

# EXHIBIT 1

To induce **the owner of the business (the "Business")** described as **Katherine Jetter LTD DBA The Vault Nantucket ("Owner")** to furnish information regarding the Business (the **"Information"**) to the **undersigned ("Recipient") for Recipient's evaluation** of a **transaction (the "Transaction")** with the Business and in consideration for Owner providing the Information, Recipient agrees and warrants to Owner as follows:

The Recipient as used herein shall mean and include the undersigned, individually, and as a member of any entity as an employee, partner, stockholder, officer, director, agent, adviser, consultants, manager, member, or any other capacity whatsoever.

The Information, as used herein shall include all verbal, electronic, and written data, reports, records, or materials obtained from Owner. **Recipient will not disclose any of the Information to any party other than persons within Recipient's organization,** or independent advisers, who have a need to know such Information for the purpose of evaluating a possible transaction with the Business. Recipient agrees to be responsible for the compliance of these other parties with all provisions of this agreement.

If Recipient decides not to pursue the proposed Transaction, Recipient will advise Owner of this fact and return to Owner all Information furnished to Recipient without keeping copies of it.

Recipient agrees to keep confidential that the Business is considering a transaction, or that any discussions are taking place concerning a possible transaction involving the Business.

Recipient **will not contact the Owner's employees, customers, suppliers, landlord or agents, for any reason whatsoever without the** prior written consent of Owner.

Recipient will not utilize, now or at any time in the future, proprietary information or trade secrets that are provided in any manner other than to evaluate a possible transaction with the Business. Recipient will not utilize this information in the conduct of **Recipient's or any other party's present or future business(es) or utilize it to enter into or compete with the Business or** assist any other party to do so.

Recipient agrees that any warranties or representations of Owner for the Information provided will only be made in subsequent Agreements in connection with the Transaction. Recipient accepts sole and final responsibility for the evaluation of the Information and all other factors relating to the Business.

Recipient represents that Recipient has sufficient resources to complete the Transaction on market terms. Recipient agrees to provide, upon request by Owner, financial statements, credit reports, references, and other pertinent information evidencing such financial sufficiency.

Recipient agrees to indemnify, hold harmless and not compete with Owner, including their respective agents, representatives, and employees from and against any and all claims, liabilities, actions, causes of action, and damages, arising from or relating to any injury or loss attributed to actions, omissions, wrongful conduct or other breach of this Agreement by Recipient, which indemnification shall include, without limitation, reimbursement of **attorney's fees** and expenses incurred by Owner in connection therewith.

Recipient agrees not to compete with the Business within 50 miles of any location of the Business.

This agreement shall be governed by the laws of the Commonwealth of Massachusetts. If any part of this agreement is held to be invalid, void, or unenforceable, the remainder of the provisions shall remain in full force and effect.

Company Name: _Miror Colletms_ Address: _1167 third St S_ City, State, Zip: _Naples FL 34112_

Tel: _____ Cell: ▮▮▮▮▮▮▮ Email: _____

Authorized Signature (Title): _____ (CEO) Date: _10/24/24_

# EXHIBIT 2

**BayState Business Brokers**
**One-Step Confidentiality and Warranty Agreement**
Return via Fax: 617-562-5701 or Email: info@mabusinessbrokers.com

The undersigned (the "Recipient") acknowledges that BayState Business Brokers (the "Broker"), 60 Kendrick Street, Suite 206, Needham, MA 02494 has been engaged to represent the Owner of the Business described as **Katherine Jetter LTD DBA The Vault Nantucket ("Owner")**. To induce Broker and Owner to furnish information regarding the Business (the "Information") to Recipient for Recipient's evaluation and possible joint venture with the Business and in consideration for Broker and Owner providing the information, Recipient agrees and warrants to Broker, and Owner as follows:

The Recipient as used herein shall mean and include the undersigned, individually, and as a member of any entity as an employee, partner, stockholder, officer, director, agent, adviser, consultants, manager, member, or any other capacity whatsoever. The Information as used herein shall include all verbal, electronic, and written data, reports, records, or materials obtained from the Broker or the Owner. Recipient will not disclose any of the Information to any party other than persons within Recipient's organization, or independent advisers, who have a need to know such Information for the purpose of evaluating the possible joint venture with the Business. Recipient agrees to be responsible for the compliance of these other parties with all provisions of this agreement.

If Recipient decides not to pursue the proposed acquisition, Recipient will advise Broker of this fact and return to Broker all Information furnished to Recipient without keeping copies of it. Recipient agrees to keep confidential that the Business is for sale, or listed for sale, or that any discussions are taking place concerning a possible sale of the Business. Recipient will not contact the Owner's employees, customers, suppliers, landlord or agents, other than Broker, for any reason whatsoever without the prior written consent of the Broker. Recipient will not utilize, now or at any time in the future, proprietary information or trade secrets that are provided in any manner other than to evaluate a possible joint venture with the Business. Recipient will not utilize this information in the conduct of Recipient's or any other party's present or future business(es) or utilize it to enter into or compete with the Business or assist any other party to do so.

The Information furnished, and to be furnished, is provided by Owner, or based on representations of the Owner, and Broker has made no investigation of it. Recipient releases Broker from any liability or responsibility in connection with the accuracy, completeness, or any other aspect of the Information provided. Recipient agrees that any warranties or representations of the Owner for the Information provided will only be made in subsequent Agreements in connection with the joint venture with the Business. Recipient accepts sole and final responsibility for the evaluation of the Information and all other factors relating to the Business.

Recipient acknowledges and understands that the Broker is acting as the agent of the Owner and that Broker's primary duty is to represent the interests of the Owner. Recipient will present all offers for the business through Broker and conduct all negotiations on any proposed transaction through Broker. Recipient agrees not to take any actions that could interfere with or hinder the collection of Broker's fees in connection with this transaction. Recipient irrevocably appoints Broker to hold all Recipient deposits presented as part of an offer to purchase the Business. Recipient represents that Recipient has sufficient resources to complete the transaction for the asking price and terms. Recipient agrees to provide, upon request by Broker or Owner, financial statements, credit reports, references, and other pertinent information evidencing such financial sufficiency.

The Recipient agrees to indemnify, hold harmless and not compete with the Broker, Co-Broker, and Owner, including their respective agents, representatives, and employees from and against any and all claims, liabilities, actions, causes of action, and damages, arising from or relating to any injury or loss attributed to actions, omissions, wrongful conduct or other breach of this Agreement by Recipient, which indemnification shall include, without limitation, reimbursement of attorney's fees and expenses incurred by the Broker and/or Owner in connection therewith. Recipient agrees not to compete with the Business within 50 miles of any location of the Business.

This agreement shall be governed by the laws of the Commonwealth of Massachusetts. If any part of this agreement is held to be invalid, void, or unenforceable, the remainder of the provisions shall remain in full force and effect.

**Agreement for this business only:  The Vault, Nantucket.**

**Be sure to fill in this form completely. Edited or incomplete forms will cause a delay in processing.**

Cash available for a down payment on a loan to buy the business: $_____  Net Worth: $_____  Credit Score: _____

Any disqualification for financing? _____  Current Job: _CEO_

Related experience for this business: _CEO  of  Marissa  Collections_

Others involved in decision: _____  When do you want to own? _____

Name: _JAY HARTINGTON_  Address: _1167 third street S_  City, State, Zip: _Nydos, FL, 34102_

Tel: ██████████  Cell: ██████████  Email: _jayhartington@marissacollections.com_

Signature: _[signature]_  Date: _4/14/23_

BayState Business Brokers · 60 Kendrick Street, Suite 206, Needham, MA 02494, 617-562-5700

# EXHIBIT 3



May 9, 2025 post from Marissa Collections' public Instagram
account, @shopmarissacollections, *available at
https://www.in-stagram.com/p/DJctmyoP0s_/*

# EXHIBIT 4



Distance between The Vault (33 Centre Street, Nantucket) and
Marissa Collections (1 Cambridge Street, Nantucket)

# EXHIBIT 5



May 8, 2025 post from Marissa Collections' public
Instagram account, @shopmarissacollections, *available
at https://www.instagram.com/p/DJZMG5NvYj3*



April 22, 2025 post from Marissa Collections' public
Instagram account, @shopmarissacollections, *available
at https://www.instagram.com/p/DIv--4WNLLa*



May 11, 2025 post from Marissa Collections' public
Instagram account, @shopmarissacollections, *available
at https://www.instagram.com/p/DJctmyoP0s_/*

3



March 14, 2025 post from Marissa Collections' public
Instagram account, @shopmarissacollections, *available
at https://www.instagram.com/p/DHL6lQyRjUF*



February 7, 2025 post from Marissa Collections' public Instagram account, @shopmarissacollections, *available at https://www.instagram.com/reel/DFydUcBPnBN*



April 27, 2025 post from Marissa Collections' public
Instagram account, @shopmarissacollections, *available
at https://www.instagram.com/p/DI9Eq7IhLrF*



April 26, 2025 post from Marissa Collections' public
Instagram account, @shopmarissacollections, *available
at https://www.instagram.com/p/DI6f6sGOAHU*



April 26, 2025 post from Marissa Collections' public
Instagram account, @shopmarissacollections, *available
at https://www.instagram.com/p/DI6f6sGOAHU*



March 27, 2025 post from Marissa Collections' public Instagram account, @shopmarissacollections, *available at https://www.instagram.com/reel/DHtqrrhyiES*



April 27, 2025 post from Marissa Collections' public
Instagram account, @shopmarissacollections, *available
at https://www.instagram.com/p/DI9Eq7IhLrF*



April 23, 2025 post from Marissa Collections' public
Instagram account, @shopmarissacollections, *available
at https://www.instagram.com/p/DIyjvC_P8oW*



March 4, 2025 post from Marissa Collections' public
Instagram account, @shopmarissacollections, *available
at https://www.instagram.com/reel/DGyomNxvDdh*



March 19, 2025 post from Marissa Collections' public
Instagram account, @shopmarissacollections, *available
at https://www.instagram.com/p/DHYn2KHshk1*



February 20, 2025 post from Marissa Collections' public
Instagram account, @shopmarissacollections, *available
at https://www.instagram.com/reel/DGTjfcpP4CU*



May 8, 2025 post from Marissa Collections' public
Instagram account, @shopmarissacollections, *available
at https://www.instagram.com/p/DJZMG5NvYj3*

# EXHIBIT 6

Certificate No. _____                                     Date Issued _____

## APPLICATION TO HISTORIC DISTRICT COMMISSION
### Nantucket, Massachusetts for
# CERTIFICATE OF APPROPRIATENESS
#### for Erection or Display of a
# SIGN

Application is hereby made for the issuance of a Certificate of Appropriateness under Section 7 of Chapter 394, Acts and Resolves of Massachusetts 1970, for erection or display of an occupational or other sign as described below and on drawings and photographs accompanying this application.

TAX MAP #: _42.3.1_      PARCEL #: _130.2_

Street & Number of Proposed Sign: _1 CAMBRIDGE ST_
Owner of Building: _ZERO INDIA STREET LLC_
Mailing Address: _121 KERCHEVAL AVE._
_GROSSE POINTE FARMS, MI_

Telephone: _____ (on island) _48236_ (off island)
I hereby authorize the agent named below to act on my behalf to make changes in the specifications or the plans contained in this application in order to bring the application into compliance with the HDC guidelines.

_____
Signature of Owner of Record

**Agent/Owner of Business**

Name: _LINK 02554_
Mailing Address: _PO BOX 1001_
_NANTUCKET, MA 02554_
Telephone: _(508) 221-8279_ (on island) _____ (off island)

| FOR OFFICE USE ONLY | |
|---|---|
| Date application received: _____ Fee Paid: $ _____ | |
| Must be acted on by: _____ | |
| Extended to: _____ | |
| Approved: _____ Disapproved: _____ | |
| Chairman: _____ | |
| Member: _____ | |
| Member: _____ | |
| Member: _____ | |
| Member: _____ | |
| Notes – Comments – Restrictions – Conditions: | |
| _____ | |
| _____ | |
| _____ | |

RECEIVED
APR 2 8 2025
By _____

---

A. TYPE OF SIGN
  1. Wall Sign                5. Flag Sign
  2. Projecting Sign          6. Fence Sign
  3. Window Sign              7. Other (specify)
  4. Temporary Sign           _____

B. MATERIAL
  1. Wood (not plywood)       2. Other (specify)
                              _____

C. EDGING DETAILS
  1. Edgebanding              3. Beveled
  2. Moulding                 4. Other (specify)

D. LETTER TYPE
  1. Applied                  3. Incised
  2. Painted                  4. Carved

E. FINISH
  1. Lettering                a. Gold Leaf
                              b. Paint
  2. Ground                   a. Paint
                              b. Sand Paint
  3. Edgebanding              a. Paint
                              b. other (specify)
  4. Moulding                 a. Paint
                              b. other (specify)

F. COLOR(S)
  1. Lettering _WHITE_
  2. Ground _PINK_
  3. Edgebanding _____
  4. Moulding _____

G. WORDING ON SIGN
  _MARISSA COLLECTIONS_
  _____
  _____
  _____

H. SIZE OF SIGN _24"H_ x _36"W_

I. SHAPE OF SIGN _RECTANGLE_

J. LOCATION OF SIGN ON BUILDING
  _(1) SMALL @ DOOR ON CAMBRIDGE ST._
  _WOULD LIKE ADDITL (2) N. UNION ST._

K. TYPE OF SUPPORT BRACKETS
  _SEE PHOTO_

L. TYPE OF LIGHTING AND LOCATION (if any)
  _N/A_

Date: _4/28/25_        Signature of Applicant _____        Signed under penalties of perjury

Town and County of Nantucket, MA

April 28, 2025



**Property Information**

Property ID    9584
Location        1 CAMBRIDGE ST
Owner           ZERO INDIA STREET LLC

**MAP FOR REFERENCE ONLY**
**NOT A LEGAL DOCUMENT**

Town and County of Nantucket, MA makes no claims and no
warranties, expressed or implied, concerning the validity or
accuracy of the GIS data presented on this map.

Geometry updated 10/16/2024
Data updated Jan. 2021

Print map scale is approximate.
Critical layout or measurement
activities should not be done using
this resource.

RECEIVED
APR 2 8 2025
By

@ CAMBRIDGE ST. DOOR




RECEIVED
APR 2 8 2025
By



Date Filed 5/19/2025 11:09 AM
Superior Court - Nantucket
Docket Number



# EXHIBIT 7



May 16, 2025 post from The Vault's Instagram account, @thevaultnantucket, *available at https://www.insta-gram.com/p/DJuWx8nxaaD/*



May 1, 2025 post from The Vault Nantucket's public Instagram account, @thevaultnantucket, *available at https://www.instagram.com/p/DJHeslwTErw*



April 25, 2025 post from The Vault Nantucket's public Instagram account, @thevaultnantucket, *available at https://www.instagram.com/p/DI4B6n4uX25*



August 8, 2024 post from The Vault Nantucket's public Instagram account, @thevaultnantucket, *available at https://www.instagram.com/p/C-bFpkxP1gm*





"Special Events", The Vault Nantucket, *available at https://www.thevaultnantucket.com/pages/special-events*



May 2, 2025 post from The Vault Nantucket's public Instagram account, @thevaultnantucket, *available at https://www.instagram.com/p/DJKG7-RTOE6*



April 5, 2025 post from The Vault Nantucket's public Instagram account, @thevaultnantucket, *available at https://www.instagram.com/p/DIEiBNdSBFY*

 



At The Vault Nantucket, not only do we sell couture jewelry, but we also offer designer apparel for women. These garments are ideal for everyday wear as well as for lounging or working out. They're also a great way to showcase your personal style.

We offer a range of apparel items and accessories, including tank tops, t-shirts, sweatpants, pajamas, leggings, phone cases, Ring Hero wristbands and more. Choose from various colors, sizes and fun designs. Buying designer wear online from us means you're adding quality garments to your wardrobe.

Designer apparel is the perfect way to treat yourself. It also makes a luxurious gift for friends and family members. You can easily search for the right pieces with our search functions: Just select the categories you want and start shopping!

### Why Choose Our Online, Couture Boutique?

Every woman deserves cozy, lavish attire. The Vault Nantucket is your one-stop shop for the chic fashionista. We offer beautiful apparel and accessories made from high-quality materials by designers and brands such as Angie Crabtree, Chakra Girl and Ring Hero. Each piece allows you to tell your story.

Browse designer wear for ladies or KJ's Picks today!

thevaultnantucket.com

"Accessories", The Vault Nantucket, *available at* *https://www.thevaultnantucket.com/collections/accessories*



December 23, 2024 post from The Vault Nantucket's public
Instagram account, @thevaultnantucket, *available at
https://www.instagram.com/p/DD7NXTZs9U2/*



May 7, 2025 post from The Vault Nantucket's public
Instagram account, @thevaultnantucket, *available at
https://www.instagram.com/reel/DJXJPE6xhNq/*



April 9, 2025 post from The Vault Nantucket's public Instagram account, @thevaultnantucket, *available at https://www.instagram.com/p/DIO1MqmS5Sd*



April 3, 2025 post from The Vault Nantucket's public Instagram account, @thevaultnantucket, *available at https://www.instagram.com/p/DH_YkZ-SMnb*



November 9, 2024 post from The Vault Nantucket's public Instagram account, @thevaultnantucket, *available at https://www.instagram.com/p/DCKOUoOhrOn*



June 18, 2024 post from The Vault Nantucket's public
Instagram account, @thevaultnantucket, *available at
https://www.instagram.com/p/C8XcghYSELN*



September 9, 2024 post from The Vault Nantucket's public Instagram account, @thevaultnantucket, *available at https://www.instagram.com/p/C_tuZHHSoUV*



April 4, 2024 post from The Vault Nantucket's public
Instagram account, @thevaultnantucket, *available at*
*https://www.instagram.com/p/C5WajxAsrer*



August 8, 2024 post from The Vault Nantucket's public
Instagram account, @thevaultnantucket, *available at*
*https://www.instagram.com/p/C-bFpkxP1gm*

# EXHIBIT 8



**ORDER #:**

| COMPANY | BUYER | BILLING ADDRESS | SHIPPING ADDRESS |
|---|---|---|---|
| | Name ------------------- | | |
| **AGENT** | Email ------------------- | | |
| Alexandra Tillson | Phone ------------------- | | |
| alexandra@katherinejetter.com | Fax ------------------- | | |
| ███████ | | | |

| CUSTOMER PO | SHIP DATE | CANCEL DATE | SHIP METHOD | TERMS |
|---|---|---|---|---|
| | | | | |

| SHIPPING INSTRUCTIONS | COMMENTS | |
|---|---|---|
| | | **TOTAL QUANTITY** 25 **TOTAL AMOUNT** 249,515.00 USD |

| | STYLE | DESCRIPTION | | HS CODE | COUNTRY | QTY | PRICE | TOTAL |
|---|---|---|---|---|---|---|---|---|
| | EDH-MINI 015 **OPTION** | Mini Tanzanite Origami Hoops | **UNIT** | | | | 9,020.00 MSRP | |
| | | | 1 | | | 1 | 9,020.00 | 9,020.00 |
| | BR22-Tan zDia **OPTION** | Tanzanite Origami Bangle | **UNIT** | | | | 16,400.00 MSRP | |
| | | | 1 | | | 1 | 16,400.00 | 16,400.00 |
| | ER-C23-4 A **OPTION** | Celestial Moonstone Earrings | **UNIT** | | | | 10,800.00 MSRP | |
| | | | 1 | | | 1 | 10,800.00 | 10,800.00 |
| | HCE-YWP **OPTION** | White South Sea Pearl Half Cage Earrings (Yello w Gold) | **UNIT** | | | | 7,480.00 MSRP | |
| | | | 1 | | | 1 | 7,480.00 | 7,480.00 |
| | ER-TT2 **OPTION** | Large Tanzanite and Blue Enamel Earrings | **UNIT** | | | | 4,800.00 MSRP | |
| | | | 1 | | | 1 | 4,800.00 | 4,800.00 |
| | ER-C19-2 4 **OPTION** | Opal Line Earrings | **UNIT** | | | | 7,700.00 MSRP | |
| | | | 1 | | | 1 | 7,700.00 | 7,700.00 |
| | ER21-Opa l1.47 **OPTION** | Baby Orbit Studs | **UNIT** | | | | 3,200.00 MSRP | |
| | | | 1 | | | 1 | 3,200.00 | 3,200.00 |

| | STYLE | DESCRIPTION | HS CODE | COUNTRY | QTY | PRICE | TOTAL |
|---|---|---|---|---|---|---|---|
|  | KJ-GBR_6.5 | Diamond and Green Rhodium Band Ring | | | | 7,800.00 MSRP | |
| | OPTION | | UNIT | | | | |
| | | | 1 | | 1 | 7,800.00 | 7,800.00 |
|  | KJ-BBR_6 | Diamond and Blue Rhodium Band Ring | | | | 7,800.00 MSRP | |
| | OPTION | | UNIT | | | | |
| | | | 1 | | 1 | 7,800.00 | 7,800.00 |
|  | KJ-PBR_7 | Diamond and Pink Rhodium Band Ring | | | | 7,800.00 MSRP | |
| | OPTION | | UNIT | | | | |
| | | | 1 | | 1 | 7,800.00 | 7,800.00 |
|  | BR22-Aqua3 | Aquamarine Origami Bangle | | | | 16,400.00 MSRP | |
| | OPTION | | UNIT | | | | |
| | | | 1 | | 1 | 16,400.00 | 16,400.00 |
|  | BR22-ITDia | Imperial Topaz Origami Bangle | | | | 16,400.00 MSRP | |
| | OPTION | | UNIT | | | | |
| | | | 1 | | 1 | 16,400.00 | 16,400.00 |
|  | ER20-50PT2 | Diamond Orbit Earrings | | | | 18,700.00 MSRP | |
| | OPTION | | UNIT | | | | |
| | | | 1 | | 1 | 18,700.00 | 18,700.00 |
|  | ER15-EP1 | Muzo Emerald, Pearl and Diamond Fan Earrings | | | | 9,440.00 MSRP | |
| | OPTION | | UNIT | | | | |
| | | | 1 | | 1 | 9,440.00 | 9,440.00 |
|  | KJCN-R | Rose Gold & Diamond Cage Station Necklace | | | | 7,480.00 MSRP | |
| | OPTION | | UNIT | | | | |
| | | | 1 | | 1 | 7,480.00 | 7,480.00 |
|  | CBSE-RTP | Tahitian Pearl Chain Basket Earrings | | | | 6,600.00 MSRP | |
| | OPTION | | UNIT | | | | |
| | | | 1 | | 1 | 6,600.00 | 6,600.00 |
|  | CBRE-Y | Cage Bar Earrings | | | | 7,900.00 MSRP | |
| | OPTION | | UNIT | | | | |
| | | | 1 | | 1 | 7,900.00 | 7,900.00 |
|  | SCPY-16 | Mini Cage Pendant in Yellow Gold (16") | | | | 2,785.00 MSRP | |
| | OPTION | | UNIT | | | | |
| | | | 1 | | 1 | 2,785.00 | 2,785.00 |
|  | BR22-Rub AAA | Graffiti Rubellite Origami Bangle | | | | 19,800.00 MSRP | |
| | OPTION | | UNIT | | | | |
| | | | 1 | | 1 | 19,800.00 | 19,800.00 |

| | STYLE | DESCRIPTION | HS CODE | COUNTRY | QTY | PRICE | TOTAL |
|---|---|---|---|---|---|---|---|
|  | EDH-013 | Pink Sapphire and Seed Pearl Hoops with Pink R hodium | | | | 9,800.00 MSRP | |
| | **OPTION** | | **UNIT** | | | | |
| | | | 1 | | 1 | 9,800.00 | 9,800.00 |
|  | EDH-011 | Purple Sapphire Origami Hoops | | | | 15,620.00 MSRP | |
| | **OPTION** | | **UNIT** | | | | |
| | | | 1 | | 1 | 15,620.00 | 15,620.00 |
|  | R26-Morg 9.35 | Morganite Heart Ring | | | | 34,800.00 MSRP | |
| | **OPTION** | | **UNIT** | | | | |
| | | | 1 | | 1 | 34,800.00 | 34,800.00 |
|  | 19RC-01 | Rock Crystal Quartz Spheres | | | | 330.00 MSRP | |
| | **OPTION** | | **UNIT** | | | | |
| | | | 3 | | 3 | 330.00 | 990.00 |
| | | | | **Quantity** | | **25** | **249,515.00 USD** |

BY SIGNING BELOW, YOU AGREE TO THE TERMS OF SALE

Date _____

**TERMS OF SALE**

The merchandise described herein is delivered to you on MEMORANDUM only, at your risk of loss, or damage from all hazards, whether by theft, robbery, fire or otherwise. Title to said merchandise is and shall remain in Katherine Jetter Ltd. and is held by the undersigned subject to my order, the delivery thereof being for the purpose of inspection only, and is to be returned to me on demand. It is understood and agreed by the undersigned that nothing contained in this memorandum shall be construed to be, nor has there otherwise been an extension of credit to the undersigned. The undersigned has no right to transfer the said merchandise to any other person, firm or corporation, whether on memorandum or otherwise, without the WRITTEN permission of Katherine Jetter Ltd. Sale of this merchandise can only be effected and title will pass only if, as, and when Katherine Jetter Ltd., the said owner, shall agree to such sale and a bill of sale rendered thereof. All the above is binding on us, regardless of prior transactions.

# EXHIBIT 9

# ⬡ KATHERINE JETTER

Unpaid

Katherine Jetter Ltd
C/O Cathy Brown

Tel:

April 4th, 2025

Marissa Collections
1167 3rd Street S
Naples, FL 34102

Invoice # 7/07/2531

**Memo Invoice - 7/07/2531**

| STYLE | DESCRIPTION | WHOLESALE COST |
|-------|-------------|----------------|
| CHERRY-ERBLK | Chocolate dipped" cherry earrings, 14K yellow gold, black enamel. | ▉ |
| BR22-PURPLE | Sapphire Mix of Blues, Purples (5.74ct), Diamonds (1.06ct) Origami Bangle in 18K Yellow Gold. | ▉ |
| BR22-AQUA3 | Custom Cut Aquamarine Baguettes (5cts) and Diamond Melee (1.12cts) Origami Bangle in 18K Yellow Gold. | ▉ |
| | **Total Sales** | $18,763.00 |
| | **Less 5% Vendor Marketing Fee** | $938.15 |
| | **Total** | $17,824.85 |

We greatly appreciate your business!
Please send check to above address made out to Katherine Jetter Ltd.
Net 30 Days.

UNPAID


# KATHERINE JETTER

Katherine Jetter Ltd
C/O Cathy Brown

Tel:

February 20, 2025

Marissa Collections
1167 3rd Street S
Naples, FL 34102

Invoice 7/07/2532

**Memo Invoice 7/07/2532**

| STYLE | DESCRIPTION | WHOLESALE COST |
|-------|-------------|----------------|
| Custom | Chain extender exchange for Large Cherry Necklace | ██ |
| | Shipping | ██ |
| | **Total** | **$475.00** |

**We greatly appreciate your business!**
**Please send check to above address made out to Katherine Jetter Ltd.**
**Net 30 Days.**

# EXHIBIT 10

March 20, 2025 Marissa Collections Website
List of Designers (including Katherine Jetter)
*https://web.archive.org/web/20250320234739/https:/marissacollections.com/pa ges/designers#expand*

29 captures
4 Aug 2020 – 14 Apr 2020

WHAT'S NEW    STYLING    THE JEWELRY GALLERY    EXPERIENCE    DESIGNERS    WOMEN    MEN    SALE

HOME  /  DESIGNERS

**categories**

ALL
WOMEN
MEN
FINE JEWELRY
FASHION JEWELRY
ACCESSORIES
HOME
BEAUTY
SUSTAINABLE
PRE-ORDER

all  a  b  c  d  e  f  g  h  i  j  k  l  m  n  o  p  q  r  s  t  u  v  w  x  y  z  0-9

## a

ACLER
ADAM LIPPES
ADEAM
ADORE ADORN
AGUA BY AGUA BENDITA
AJE
ALAÏA
ALANUI
ALBERTA FERRETTI
ALEJANDRA ALONSO ROJAS
ALÉMAIS
ALEXANDER LAUT
ALEXANDER MCQUEEN
ALEXANDRE BIRMAN
ALEXANDRE VAUTHIER
ALEXIA CONNELLAN
ALEXIS
ALEXIS BITTAR
ALEX PERRY
ALICE & OLIVIA
ALLUDE
ALTUZARRA
AMA PURE
ANANYA
ANATOMETAL
ANDRES OTALORA
ANITA KO
ANNA QUAN
ANTONINO VALENTI
ANZIE
AQUAZZURA
ARMA
ARTESANO
ARUNASHI
ASPESI
ASPIGA
ASSAEL
ASTON STUDIO
AUGUSTINUS BADER
AVENUE MONTAIGNE
AV8-8
AZLEE

## b

BADGLEY MISCHKA
BAGGINS
BALENCIAGA
BALMAIN
BAYCO
BEA BONGIASCA
BEATRIZ CAMACHO
BERNADETTE
BIBI VAN DER VELDEN
BIRD & KNOLL
BIZZOTTO
BLISS LAU
BLUMARINE
BOCHIC
BORGO DE NOR
BOTTEGA VENETA
BOUNKIT JEWELRY
BRANDON MAXWELL
BRENT NEALE
BRUNELLO CUCINELLI
BUDDHA MAMA
BVLA
BYREDO
BYTIMO

## c

CADAR
CADDIS
CALLAS MILANO
CAMILLA

## h

HARWELL GODFREY
HERNO
HERVE LEGER
HONORINE
HOORSENBUHS
HUISHAN ZHANG

## i

ILIUM WING
INBAR
IN THE MOOD FOR LOVE
IRENE NEUWIRTH JEWELRY
ISABELLE FA

## j

JACQUIE AICHE
JADA LOVELESS
JADE TRAU
JAKETT
JANAVI INDIA
JANE CARR
JANESSA LEONE
JARED LEHR
JBQ
JEFFREY LEVINSON
JENNA BLAKE
JIMMY CHOO
JOHANNA ORTIZ
JOHN VARVATOS
JOSLIN STUDIO
JUAN CARLOS OBANDO
JUDITH LEIBER
JUNE79
JW ANDERSON

## k

KATHERINE JETTER
KAVANT & SHARART
KWIAT

## l

L'AFSHAR
L'AGENCE
LA DOUBLE J
LAMARQUE
LAMBERTO LOSANI
LANVIN
LAPOINTE
LA PRESTIC OUISTON
LARKSPUR & HAWK
LAUREN RUBINSKI
LE GRAMME
LE NINE
LE SUPERBE
LEIGH MAXWELL
LELA ROSE
LEO LIN
LESSE
LINGUA FRANCA
LISA BAYER
LITTLE ONES
LIZZIE FORTUNATO
LIZZIE FORTUNATO FINE
LOEFFLER RANDALL
LOGAN HOLLOWELL
LOQUET
LORAIDA
LOREE RODKIN
LUCIFER VIR HONESTUS
LUISA BECCARIA
LUIS MORAIS

## p

PAMELLA ROLAND
PAOLA SIGHINOLFI
PAOLITA
PARIS TEXAS
PARULINA
PATBO
PEDRO GARCIA
PERFECT MOMENT
PESERICO
PETER COHEN
PETER PILOTTO
PHILLIPS HOUSE
PHILOSOPHY
PIERRE HARDY
PIRANESI
POOLSIDE
PRADA

## q

## r

RABANNE
RACHEL GILBERT
RAFFAELLO BETTINI
RAG & BONE
RALPH LAUREN
RAY-BAN
REDLINE
REEM ACRA
REPOSSI
RETROFETE
RETROUVAI
RHODE
RIVIERAS
RIVERS EIGHT
ROBERTO CAVALLI
ROBERTO DEMEGLIO
ROBINSON PELHAM
RODARTE
ROEN
ROKSANDA
ROLAND MOURET
ROSIE ASSOULIN
RUCHI NEW YORK

## s

SABLYN
SABOO FINE JEWELS
SAFIYAA
SAINT LAURENT
SALONI
SARA BATTAGLIA
SARA ROKA
SARA WEINSTOCK
SELIM MOUZANNAR
SELF-PORTRAIT
SENSI STUDIO
SERGIO ROSSI
SERPUI
SEVAN BICAKCI
SHAY JEWELRY
SIDNEY GARBER
SILVIA FURMANOVICH
SILVIA TCHERASSI
SIMKHAI
SINGLE STONE
SISLEY
SMYTHE
SOLACE LONDON
SONIA RYKIEL
SOPHIA WEBSTER
SOPHIQUE

website uses cookies to ensure you get the best experience on our website. Learn More

Got it!

CAROLINA BUCCI
CAROLINA HERRERA
CAROLINA K
CAROL KAUFFMANN
CASEY PEREZ
CASIO
CASTAÑER
CASTRO SMITH
CATHERINE REGEHR
CÉLINE DAOUST
CHARO RUIZ IBIZA
CHLOÉ
CHRISTY LYNN
CITIZENS OF HUMANITY
CLERGERIE
COOMI
COSTARELLOS
CREED
CULT GAIA

## d

DANA REBECCA DESIGNS
DAVID WEBB
DEL CORE
DENISE CASSOU
DES PHEMMES
DEVON WOODHILL
DEZSO BY SARA BELTRAN
DMA COSMETICS
DMN PARIS
DOLCE & GABBANA
DOROTHEE SCHUMACHER

## e

EDEN PRESLEY
EDIE PARKER
EÉRA
ELAINE KIM
ELEVENTY
ELIE SAAB
EMILY P WHEELER
ERDEM
ERES
ERMANNO SCERVINO
ETRO
EUGENIA KIM
EYECHILL, LLC.

## f

FANTASIA BY DESERIO
FEDERICA RETTORE
FENDI
FERNANDO JORGE
FIGUE
FISZMAN JEWEL
FOR FUTURE REFERENCE
FOUNDRAE
FRAME DENIM
FRED LEIGHTON
FULLORD

## g

GABRIELA HEARST
GALVAN LONDON
GAS BIJOUX
GEDEBE
GEMFIELDS X MUSE
GIACCA LUSSO
GIAMBATTISTA VALLI
GIANVITO ROSSI
GIGI BURRIS MILLINERY
GIGI CLOZEAU
GIVENCHY
GOLDEN GOOSE
GOSHWARA
GRACE WINFREY
GRAZIELA
GRETA CONSTANTINE
GUCCI
GUL HURGEL
GUBHAN

## m

MAISON COMMON
MAJESTIC FILATURES
MAKEUPDROP
MANOLO BLAHNIK
MANSUR GAVRIEL
MANTÜ
MARCHESA
MARCHESA NOTTE
MARCO BICEGO
MARIA TASH
MARIAN
MARIE LICHTENBERG
MARINA B
MARISSA COLLECTIONS
MARISSA DIAMONDS
MARK CROSS
MARK DAVIS
MARKARIAN
MARLA AARON
MAXNI
MARQUES' ALMEIDA
MARY KATRANTZOU
MARY SMALLWOOD
MASON & BOOKS
MATTIA CIELO
MAX MARA
MAYGEL CORONEL
MEHRY MU
MELISSA KAYE
MEREDITH YOUNG
MESSIKA
MICHAEL KORS COLLECTION
MICHELLE WILHITE
MIGUELINA
MINNIE ROSE
MIRONOVA
MISSONI
MIZUKI
MODERN MOOD
MOKSH
MONICA RICH KOSANN
MONICA SORDO
MONIQUE LHUILLIER
MORBAU
MORITZ GLIK
MOTHER
MYSTIQUE

## n

NAEEM KHAN
NANIS
NEOMETAL
NEVERNOT
NICHOLAS VARNEY
NIKOS KOULIS
NOUVEL HERITAGE

## o

ODEEH
OF RARE ORIGIN
OLIVER PEOPLES
ONDYN
ORLEBAR BROWN
ORLY MARCEL
OROTON
OSCAR DE LA RENTA

SORELLINA
SPANX
SPINELLI KILCOLLIN
SPRWMN
STATE PROPERTY
STAUD
STEFERE
STEPHANIE ANDERS XO
STELLA MCCARTNEY
STREETS AHEAD
STORROW
SUNBUNCH
SUPER SMALLS
SUSAN BENDER
SUTRA
SUZANNE KALAN
SYDNEY EVAN
SYLVA & CIE
SYLVIA TOLEDANO

## t

TAMARA COMOLLI
TAMMY FENDER
TANYA FARAH
TEMPERLEY LONDON
TEMPTATION POSITANO
TEN THOUSAND THINGS
THE LOVE KNOT
THE SEI
TODD REED
TONY DUQUETTE
TWP

## u

ULLA JOHNSON
UNCOMMON MATTERS
UNIFORM OBJECT

## v

VALERIE KHALFON
VAN
VAN PALMA
VANESSA BRUNO
VEJA
VERDURA
VERONICA BEARD
VERSACE
VHERNIER
VICTORIA BECKHAM
VICTOR VELYAN
VIKTOR & ROLF
VINCE
VINTNERS DAUGHTER
VIRA
VRAM

## w

WALTERS FAITH
WANDLER
WE EAT AVOCADO TOAST
WENDY YUE
WESTMAN ATELIER
WITH LOVE
WOLFORD

## x

## y

YEPREM JEWELLERY
YI COLLECTION
YVEL

## z

ZAHN-Z
ZEYNEP ARÇAY
ZIMMERMANN
ZOE CHICCO
ZONDA NELLIS

## 0-9

64 FACETS



**get marissa mail**
STAY CONNECTED WITH US VIRTUALLY

| SHOP NOW | CLIENT SERVICES | CONTACT US | MARISSA COLLECTIONS | PARTNER |
|---|---|---|---|---|
| DESIGNERS | LOGIN | CALL US: 1-800-581-6641 | WHO WE ARE | MC GIVES BACK |
| NEW & NOW | REGISTER | EMAIL US | EVENTS | AFFILIATE PINK PROGRAM |
| WOMEN | PAYMENT AND SHIPPING | | OUR STORES | |
| MEN | RETURNS | EXPERIENCE | OUR EXPERTS | |
| THE JEWELRY GALLERY | PRIVACY POLICY | GET PIERCED | REVIEWS | |
| SALE | ACCESSIBILITY | LINK UP, WITH LOVE | PRESS | |

March 29, 2025 Marissa Collections Website
Katherine Jetter Jewelry
*https://marissacollections.com/collections/fine-jewelry?page=1&rb_vendor=KATHERINE JETTER*
*(Webpage now disabled)*



# fine jewelry

| NEWEST | ⌄ |
|---|---|

Filters

KATHERINE JETTER  ✕

Reset filters

## CATEGORY                                    +

## AVAILABILITY                                +

## DESIGNER                                    −

☐ GRACE WINFREY $^{21}$

☐ GRAZIELA $^{33}$

☐ GURHAN $^{10}$

☐ HARWELL GODFREY $^{33}$

☐ HOORSENBUHS $^{12}$

☐ INBAR $^{1}$

☑ KATHERINE JETTER $^{27}$

Show more

CE                                            +



### STONE

### SHOE SIZE

### ALL JEWELRY





### katherine jetter
PURPLE SAPPHIRE ORIGAMI
HOOP EARRINGS
**$15,620**

### katherine jetter
ROCK CRYSTAL QUARTZ CAGE
STONE
**$330**

### katherine jetter
TAHITIAN PEARL CHAIN
BASKET EARRINGS
**$6,600**



### katherine jetter
CELESTIAL MOONSTONE
EARRINGS
**$10,800**

### katherine jetter
WINGED "LOVE" NECKLACE
**$4,900**

### katherine jetter
LARGE TANZANITE BLUE
ENAMEL STUD EARRINGS
**$4,800**














**katherine jetter**
MINI ORIGAMI HOOP EARRINGS
**$9,020**

**katherine jetter**
MORGANITE HEART RING
**$34,800**

**katherine jetter**
EMERALD TIK TOK EARRINGS
**$14,800**

**katherine jetter**
DIAMOND RHODIUM RING -
GREEN
**$7,800**

**katherine jetter**
TANZANITE ORIGAMI BANGLE
**$16,400**

**katherine jetter**
SMALL DIAMOND CAGE BAR
EARRINGS
**$7,900**












### katherine jetter
WHITE SOUTH SEA PEARL HALF CAGE EARRINGS
**$7,480**

### katherine jetter
PINK TOURMALINEDIAMOND ORBIT EARRINGS
**$18,700**

### katherine jetter
OPAL AND BLUE ENAMEL EARRINGS
**$3,200**





### katherine jetter
IMPERIAL TOPAZ ORIGAMI BANGLE
**$16,400**

### katherine jetter
MIXED SHAPE OPAL LINE EARRINGS
**$7,700**

### katherine jetter
MINT GREEN TOURMALINE WHITE ENAMEL RING
**$18,200**






Curated Fine Jewelry - Fine Jewelry Gallery - Marissa Collections



RUBELLITE & DIAMOND
ORIGAMI BANGLE
**$19,800**

EMERALD PEAR FAN EARRINGS
**$9,440**
ONE-OF-A-KIND

DIAMOND AND BLUE E-
COATING BAND RING
**$7,800**







### katherine jetter

DIAMOND AND PINK E-
COATING BAND RING
**$7,800**

### katherine jetter

SMALL TUMBLED TURQUOISE
NUGGET
**$400**

### katherine jetter

MINI CAGE PENDANT - YELLOW
GOLD
**$2,785**









katherine jetter   katherine jetter   katherine jetter

marissa
COLLECTIONS

AS FAMILY-OWNED BOUTIQUE, WE ARE PROUD TO OFFER OUR CUSTOMER A CURATED COLLECTION OF FINE JEWELRY FROM RENOWNED DESIGNERS. WE WORK WITH DISTINGUISHED FINE JEWELRY DESIGNERS, INCLUDING ANITA KO, SARA WEINSTOCK, CULT GAIA, AND MANY OTHERS. FOR AN EFFICIENT SHOPPING EXPERIENCE, YOU CAN REFINE YOUR SEARCH BY UTILIZING THE FILTER FEATURES. OUR LUXURY JEWELRY CAN BE SEPARATED BY AVAILABILITY, DESIGNER, PRICE, STONE, COLOR, AND JEWELRY SIZE. BROWSE OUR FINE JEWELRY GALLERY TO VIEW OUR EARRINGS, NECKLACES, BRACELETS, AND RINGS IN MORE DETAIL. FOR OUR CUSTOMERS' CONVENIENCE, WE OFFER FREE SHIPPING AND FREE RETURNS ON ALL OF OUR CURATED JEWELRY. PLEASE VISIT OUR BOUTIQUE IN NAPLES, FLORIDA, OR SHOP OUR WEBSITE FOR MORE DETAILS ABOUT OUR CURATED FINE JEWELRY. TO SPEAK WITH A STYLIST, PLEASE CALL US AT 800-581-6641.

## get marissa mail
STAY CONNECTED WITH US VIRTUALLY

| Email | SIGN UP |

SHOP FASHION ›

CUSTOMER SERVICE ›

CONTACT US ›

MARISSA COLLECTIONS ›

PARTNER ›

EXPERIENCE ›

Current Marissa Collections Website (with Katherine Jetter removed)
*https://marissacollections.com/pages/designers*



Fashion Designer | Designer Clothes | Top Designer Brands | Marissa Collections

| ALL | WOMEN | MEN | FINE JEWELRY | FASHION JEWELRY | ACCESSORIES | HOME | BEAUTY | SUSTAINABLE | PRE-ORDER |
|-----|-------|-----|--------------|-----------------|-------------|------|--------|-------------|-----------|

a   b   c   d   e   f   g   h   i   j   k   l   m   n   o   p   q   r   s   t   u   v   w   x   y   z   **0-9**

ACLER

ADAM LIPPES

ADEAM

ADORE ADORN

AGUA BY AGUA BENDITA

AJE

ALANUI

ALAÏA

ALBERTA FERRETTI

ALEJANDRA ALONSO ROJAS

ALÉMAIS

ALEX PERRY

ALEXANDER LAUT

ALEXANDER MCQUEEN

ALEXANDRE BIRMAN

ALEXANDRE VAUTHIER

ALEXIA CONNELLAN

ALEXIS

ALEXIS BITTAR

ALICE & OLIVIA

ALLUDE

ALTUZARRA

AMA PURE



ANANYA



DISCOVER TOP FINE JEWELRY D

  

ANTONINO VALENTI

ANTONIO BERARDI

ANYA HINDMARCH

AQUAZZURA

ARMA

ARTESANO

ARUNASHI

ASPESI

ASPIGA

ASTON STUDIO

AUGUSTINUS BADER

AVENUE MONTAIGNE

AVI-8

AZLEE

BADGLEY MISCHKA

BAGGINS

BALENCIAGA

BALMAIN

BAYCO

BEA BONGIASCA

BEATRIZ CAMACHO

BECK JEWELS

BERNADETTE

BIBI VAN DER VELDEN

BIRD & KNOLL

BIZZOTTO

BLISS LAU

BLUMARINE

BOCHIC

BORGO DE NOR

BOTTEGA VENETA



BOUNKIT JEWELRY

BRANDON MAXWELL

BRENT NEALE

BRUNELLO CUCINELLI

BUDDHA MAMA

BVLA

BYREDO

BYTIMO

CADAR

CADDIS

CALLAS MILANO

CAMILLA

CARA CARA

CARBON & HYDE

CAROL KAUFFMANN

CAROLINA BUCCI

CAROLINA HERRERA

CAROLINA K

CASEY PEREZ

CASIO

CASTAÑER

CASTRO SMITH

CATHERINE REGEHR

CÉLINE DAOUST

CHARO RUIZ IBIZA

CHLOÉ

CHRISTY LYNN

CITIZENS OF HUMANITY

CLERGERIE

COOMI

CORNELIANI

COSTARELLOS

CREED

CULT GAIA

DANA REBECCA DESIGNS

DAVID WEBB



DEL CORE

DENISE CASSOU

DES PHEMMES

DEVON WOODHILL

DEZSO BY SARA BELTRAN

DMA COSMETICS

DMN PARIS

DOLCE & GABBANA

DOROTHEE SCHUMACHER

EDEN PRESLEY

EDIE PARKER

EÉRA

ELAINE KIM

ELEVENTY

ELIE SAAB

CASEY PEREZ JEWELRY

EMILY P WHEELER

ERDEM

ERES

ERMANNO SCERVINO

ETRO

EUGENIA KIM

EYECHILL, LLC

EÉRA

FANTASIA BY DESERIO

FEDERICA RETTORE

FENDI

FERNANDO JORGE

FIGUE

FOR FUTURE REFERENCE

FOUNDRAE

FRAME DENIM

FRED LEIGHTON

FULLORD

GABRIELA HEARST

GALVAN LONDON



GAS BIJOUX

GEDEBE

GEMFIELDS X MUSE

GIACCA LUSSO

GIAMBATTISTA VALLI

GIANVITO ROSSI

GIGI BURRIS MILLINERY

GIGI CLOZEAU

GIVENCHY

GOLDEN GOOSE

GOSHWARA

GRAZIELA

GRETA CONSTANTINE

GUCCI

GUL HURGEL

GURHAN

HARWELL GODFREY

HERNO

HONORINE

HOORSENBUHS

HUISHAN ZHANG

ILIUM WING

IN THE MOOD FOR LOVE

INBAR

IRENE NEUWIRTH JEWELRY

ISABELLE FA

JACQUIE AICHE

JADA LOVELESS

JADE TRAU

JAKETT

JANAVI INDIA

JANE CARR

JANESSA LEONE

JBQ

JEFFREY LEVINSON

JENNA BLAKE



JENNIFER FISHER

JENNIFER MEYER

JENNY PACKHAM

JIMMY CHOO

JOHANNA ORTIZ

JOHN VARVATOS

JOSLIN STUDIO

JUAN CARLOS OBANDO

JUDITH LEIBER

JUNE79

JW ANDERSON

KAVANT & SHARART

KWIAT

L'AGENCE

L'AFSHAR

LA DOUBLEJ

LA PRESTIC OUISTON

LAMARQUE

LANVIN

LAPOINTE

LARKSPUR & HAWK

LAUREN RUBINSKI

LE GRAMME

LE NINE

LE SUPERBE

LEIGH MAXWELL

LELA ROSE

LEO LIN

LESSE

LINGUA FRANCA

LISA BAYER

LITTLE ONES

LIZZIE FORTUNATO

LIZZIE FORTUNATO FINE

LOEFFLER RANDALL

LOGAN HOLLOWELL



LOQUET

LORAIDA

LOREE RODKIN

LUCIFER VIR HONESTUS

LUIS MORAIS

LUISA BECCARIA

L'AFSHAR

MAISON COMMON

MAJESTIC FILATURES

MAKEUPDROP

MANOLO BLAHNIK

MANSUR GAVRIEL

MANTÙ

MARCHESA

MARCHESA NOTTE

MARCO BICEGO

MARIA TASH

MARIANI

MARIE LICHTENBERG

MARINA B

MARISSA COLLECTIONS

MARISSA DIAMONDS

MARK CROSS

MARK DAVIS

MARKARIAN

MARLA AARON

MARNI

MARQUES' ALMEIDA

MARY KATRANTZOU

MARY SMALLWOOD

MASON & BOOKS

MATTIA CIELO

MAX MARA

MAYGEL CORONEL

MEHRY MU

MELISSA KAYE



MEREDITH YOUNG

MESSIKA

MICHAEL KORS COLLECTION

MICHAEL KORS WATCH

MICHELLE WILHITE

MINNIE ROSE

MIRONOVA

MISSONI

MIZUKI

MODERN MOOD

MOKSH

MONICA RICH KOSANN

MONICA SORDO

MONIQUE LHUILLIER

MOREAU

MORITZ GLIK

MOTHER

MYSTIQUE

NAEEM KHAN

NANIS

NEOMETAL

NEVERNOT

NIKOS KOULIS

NOUVEL HERITAGE

ODEEH

OF RARE ORIGIN

OLIVER PEOPLES

ONDYN

ORLEBAR BROWN

ORLY MARCEL

OROTON

OSCAR DE LA RENTA

PAMELLA ROLAND

PAOLA SIGHINOLFI

PAOLITA

PARIS TEXAS



Fashion Designer | Designer Clothes | Designer Brands | Marissa | Marissa Collections

PARULINA

PATBO

PEDRO GARCIA

PERFECT MOMENT

PESERICO

PETER COHEN

PETER PILOTTO

PHILLIPS HOUSE

PHILOSOPHY

PIERRE HARDY

PIRANESI

POOLSIDE

PRADA

RABANNE

RACHEL GILBERT

RAFFAELLO BETTINI

RAG & BONE

RALPH LAUREN

RANI ARABELLA

RAQUEL DINIZ

RAY-BAN

REDLINE

REEM ACRA

REPOSSI

RETROFETE

RETROUVAI

RHODE

RIVERS EIGHT

RIVIERAS

ROBERTO CAVALLI

ROBERTO DEMEGLIO

ROBINSON PELHAM

RODARTE

ROEN

ROKSANDA

ROLAND MOURET



ROSIE ASSOULIN

RUCHI NEW YORK

SABLYN

SABOO FINE JEWELS

SAFIYAA

SAINT LAURENT

SALONI

SARA BATTAGLIA

SARA ROKA

SARA WEINSTOCK

SELF-PORTRAIT

SELIM MOUZANNAR

SENSI STUDIO

SERGIO ROSSI

SERPUI

SEVAN BICAKCI

SHAY JEWELRY

SIDNEY GARBER

SILVIA FURMANOVICH

SILVIA TCHERASSI

SIMKHAI

SISLEY

SMYTHE

SOLACE LONDON

SONIA RYKIEL

SOPHIA WEBSTER

SOPHIE BILLE BRAHE

SOPHIQUE

SORELLINA

SPANX

SPINELLI KILCOLLIN

SPRWMN

STATE PROPERTY

STAUD

STEFERE

STELLA MCCARTNEY



STEPHANIE ANDERS XO

STORROW

STREETS AHEAD

SUNBUNCH

SUPER SMALLS

SUSAN BENDER

SUTRA

SUZANNE KALAN

SYDNEY EVAN

SYLVA & CIE

SYLVIA TOLEDANO

TAMARA COMOLLI

TAMMY FENDER

TANYA FARAH

TEMPERLEY LONDON

TEMPTATION POSITANO

TEN THOUSAND THINGS

THE LOVE KNOT

THE LUMINARIES BY COUTURE

THE SEI

TKEES

TODD REED

TONY DUQUETTE

TWP

ULLA JOHNSON

UNCOMMON MATTERS

UNIFORM OBJECT

VALERIE KHALFON

VAN

VAN PALMA

VANESSA BRUNO

VEJA

VERDURA

VERONICA BEARD

VERSACE

VHERNIER



VICTOR VELYAN

VICTORIA BECKHAM

VIKTOR & ROLF

VINCE

VINTNERS DAUGHTER

VIRA

VRAM

WALTERS FAITH

WANDLER

WE EAT AVOCADO TOAST

WENDY YUE

WESTMAN ATELIER

WITH LOVE

WOLFORD

YEPREM JEWELLERY

YI COLLECTION

YVEL

ZAHN-Z

ZEYNEP ARÇAY

ZIMMERMANN

ZOE CHICCO

ZONDA NELLIS

64 FACETS

## get marissa mail

STAY CONNECTED WITH US VIRTUALLY

Email                            SIGN UP

SHOP FASHION                                    >

CUSTOMER SERVICE                               >

CONTACT US                                     >







## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was filed on May 27, 2025 through the ECF System and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

Dated:  May 27, 2025                          */s/ John F. Ferraro*
                                              John F. Ferraro