**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| KATHERINE JETTER, and KATHERINE JETTER LTD. d/b/a THE VAULT NANTUCKET, <br><br> Plaintiffs, <br><br> v. <br><br> BOUTIQUE TERE, INC. d/b/a MARISSA COLLECTIONS, JAY HARTINGTON, MARISSA HARTINGTON, and BURT HARTINGTON <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) )     Civil Action No. 1:25-cv-11491-DJC |

## DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR IMPOUNDMENT

Pursuant to Local Rules 7.1 and 7.2, Defendants Boutique Tere, Inc., d/b/a Marissa Collections ("Marissa Collections"), Jay Hartington, Marissa Hartington, and Burt Hartington (collectively, "Defendants"), submit this Opposition to Plaintiffs' Motion for Impoundment of the Declaration of Kathleen Marini and Exhibit A thereto (the "Motion for Impoundment"), which Plaintiffs filed in support of their Reply to Defendants' Opposition to Plaintiffs' Emergency Motion for a Temporary Restraining Order and, After Hearing, Preliminary Injunction ("Opposition").

In their Motion for Impoundment, Plaintiffs seek not only to impound – in its entirety – a set of emails and spreadsheets exchanged between Jetter and Hartington (which Plaintiffs continue to erroneously assert constitute "proprietary and confidential business information and trade secrets") that are attached as Exhibit A to the Marini Declaration (the "Documents at Issue"), but to unilaterally designate the Documents at Issue as "Attorneys' Eyes Only," without basis or explanation.  Plaintiffs rely on the Documents at Issue in support of their salacious and

slanderous, public allegations against Defendants in their request for the extraordinary relief of a

preliminary injunction, yet at the same time broadly seek to shield these documents from both

the public eye, and by limiting them to "Attorneys' Eyes Only," even from the Defendants

themselves.[1]

However, the Documents at Issue, which Jetter provided to Hartington (some more than

two years' ago), a "compilation" of which she now seeks to impound were by Jetter's own

admission incomplete, unaudited, and with often shifting or amended information from email to

email – none of which were ever verified or supported by actual business records. Indeed, it is

clear from even a cursory review of the Documents at Issue, *none* of the information provided

disclosed any unique business strategy of The Vault, and therefore the Documents at Issue did

not provide Defendants with meaningful information for purposes of evaluating a merger, and

certainly provided no economic or competitive advantage. Plaintiffs' continued conclusory

reference to these documents as "trade secrets" is self-serving and not based in reality, and the

Documents at Issue should not be broadly impounded in their entirety, or designated as

"Attorneys' Eyes Only," on that basis. Should the Court find it advisable, Defendants do not

oppose a more limited redaction of the exact dollar figures listed in the documents (to the extent

they are even accurate). However, Plaintiffs' request to impound the Documents at Issue in their

entirety and designate them "Attorney's Eyes Only" is unreasonable and unsupported by the law.

---

[1]      Indeed, when the undersigned counsel notified Plaintiffs' counsel that there was no agreement concerning an "attorney's eyes only" designation on the documents they were seeking to impound, Plaintiffs' counsel responded, "**Since it's marked attorneys' eyes only, you cannot review Exhibit A with your clients[.]**" Plaintiffs make this extraordinary and baseless demand despite the fact that the basis of their lawsuit is that Defendants have seen and would use this information somehow, even though, as explained below, they are not trade secrets and have no value to Defendants.

## I.    Background

Following the filing of Defendants' Opposition, pursuant to the briefing schedule entered by the Court, Plaintiffs' deadline for filing their Reply was set for Monday, June 9, 2025. (ECF No. 17.) Apparently recognizing the plain deficiency of their Motion for Preliminary Injunction, which again did not identify any alleged trade secrets, at 9:01 p.m. on Sunday, June 8, 2025, Plaintiffs' counsel emailed Defendants' counsel stating their intention to "file a Motion to Impound an exhibit that contains Plaintiffs' confidential business information and trade secrets." Plaintiffs did not then attach the documents they intended to seek to impound. Plaintiffs provided the Documents at Issue to Defendants' counsel on June 9, 2025, at approximately noon.

In conclusory fashion, Plaintiffs describe the Documents at Issue as "compilations of multi-year detailed financial information and profit & loss statements, business and marketing strategies, employee compensation and salary information, commissions information, operating expenses, valuations, sales metrics, information about cost-of-goods-sold and profit margins, tax information, and other confidential business know-how." (ECF No. 22.).

As discussed herein, Plaintiffs overstate their description of these documents. The Documents at Issue consist of Jetter's or her then-broker's unaudited *opinion* of the valuation of The Vault (Ex. A, p. 7-24); unaudited projected future valuations of The Vault (Ex. A, p. 11-24, 56-57; ECF No. 21 ¶¶ 44-45); information about amounts paid for advertising, without reference to any actual advertising strategy (Ex. A, p. 3, 36); compensation amounts that, as set out in Hartington's Affidavit, frequently changed and did not describe any unique compensation model (Ex. A, p. 32, 36; ECF No. 21 ¶ 44); several unanswered questions (Ex. A, p. 28-29, 59-62); and her own demands for the transaction (Ex. A, p. 31-32, 59-62).

Notwithstanding Plaintiffs' assertions, Jetter did not provide any secret, future tangible business plans or marketing strategies other than the mere fact of those expenses (and what she hoped she might achieve in revenues *if a merger with Marissa Collections was consummated*); she did not provide any of her customer information or client lists; and did not provide any unique knowledge that Marissa Collections was not aware of that would provide any economic or competitive advantage. (ECF No. 21 ¶¶ 41-52.). In fact, Jetter specifically did not provide information on what strategies would set the business apart. (Ex. A, p. 61.)

When Plaintiffs' counsel sent the Documents at Issue to Defendants' counsel, Plaintiffs' counsel unilaterally designated the documents as "Attorneys' Eyes Only." Given that Plaintiffs are seeking to rely on Documents at Issue in their request for a preliminary injunction, which is a request for drastic relief, Defendants' counsel followed up with Plaintiffs' counsel via email, confirmed that the Parties had not agreed to such designation, and would obviously need to review the proposed Documents at Issue with their clients before providing their position.

Plaintiffs' counsel responded at 12:44 pm, stating, "you cannot review Exhibit A with your clients," and demanded a response by no later than 3:00 p.m.  Again, as the Documents at Issue are not trade secrets, and Plaintiffs rely heavily on these documents in their request for a preliminary injunction – indeed their whole case is premised on the allegation that the Documents at Issue were provided to Defendants and gave the Defendants a competitive advantage and are otherwise not known to the public – Plaintiffs have failed to overcome the strong presumption of public access. Plaintiff's request to impound these documents in their entirety and designate them "Attorney's Eyes Only" should be denied.

## II.    Legal Standard

"Courts have long recognized 'that public monitoring of the judicial system fosters the important values of quality, honesty and respect for our legal system.'" *United States v. Kravetz*, 706 F.3d 47, 52 (1st Cir. 2013) (quoting *In re Providence Journal*, 293 F.3d 1, 9 (1st Cir. 2002)). "[A]ll documents filed in connection with a motion that determines the substantive rights of the parties 'are subject to the presumption of public access.'" *Roy v. FedEx Ground Package Sys.*, Inc., No. 3:17-CV-30116-KAR, 2024 WL 1346478, at *2 (D. Mass. Mar. 29, 2024) (citing *Tourangeau v. Nappi Distribs.*, No. 2:20-cv-00012-JAW, 2022 WL 768688, at *5 (D. Me. Mar. 14, 2022)).

"[A] party seeking to file a document under seal must demonstrate that 'good cause' exists to do so." *Dunkin Donuts Franchised Restaurants, LLC v. Agawam Donuts, Inc.*, No. CIV.A. 07-11444-RWZ, 2008 WL 427290, at *1 (D. Mass. Feb. 13, 2008) (citing Fed. R. Civ. P. 26(c)). "Demonstrating 'good cause' entails making a particularized factual showing of the harm that would be sustained if the court did not allow the filing under seal." *Id.* "What constitutes 'good cause,' and therefore what concerns can justify a document being filed under seal, depends on the nature of the filing. The more important the document is to the core judicial function of determining the facts and law applicable to the case, the stronger the presumption of public access and the higher the burden to overcome it." *Bradford & Bigelow, Inc. v. Richardson*, 109 F. Supp. 3d 445, 447 (D. Mass. 2015).

## III.    Plaintiffs Cannot Meet the High Burden to Establish that the Documents at Issue Should be Impounded

Because the Documents at Issue are at best generalized business information that are not trade secrets that would provide a competitive advantage, Plaintiffs' Motion for Impoundment fails to overcome the presumption of public access, particularly given Plaintiffs' singular

5

reliance on these documents in seeking such a drastic remedy as preliminary injunction, going so far as to describe them as the "crown jewels" of her business, despite them being completely devoid of any information that could be used by a competing entity.

"[T]he pendulum swings the other way for materials filed in connection with non-discovery motions, like motions for summary judgment, *Daubert* motions, or motions in *limine* … To seal such filings, the party seeking to overcome the presumption of public access must demonstrate significant countervailing interests, like the existence of trade secrets in the documents or confidential business information." *Bradford & Bigelow, Inc.*, 109 F. Supp. 3d at 448. Further, as the *Bradford & Bigelow, Inc.* court explained:

> Bradford & Bigelow seeks to seal the summary judgment filings because they may rely upon its 'customer pricing information,' 'employee emails and communications,' 'confidential and proprietary information and trade secrets concerning [its] manufacturing and business processes,' 'financial information ..., including costs, expenses, and profit margins,' 'tax returns and related information,' 'personnel files,' 'communications between B & B and its customers,' … It does not explain why any specific documents should be sealed, but rather contends that all should be because the parties agreed to keep them secret in the Confidentiality Stipulation. But these documents, to the extent they will be filed with the court, will relate to and provide the foundation for dispositive motions. For such documents, the public interest in access is strong and the tradition of public access is robust. To support sealing them, Bradford & Bigelow must establish an overriding interest in sealing and must ensure that any sealing is narrowly tailored to shield as little from public view as possible.

109 F. Supp. 3d at 449 (finding that designation under a stipulated protective order as confidential was not sufficient to warrant sealing on dispositive motion).

When seeking to impound documents in a substantive motion, as is the case here, it is the burden of the party seeking to impound the documents to overcome the strong presumption of public access by pointing to a countervailing interest; and while confidential business information/trade secrets can be such an interest, it remains the burden of the party seeking impoundment to make a particularized factual showing they would be harmed by the disclosure -

- here that the documents would provide some economic/competitive advantage. *See Tourangeau*, 2022 WL 768688 at \*6 (As to the spreadsheets reflecting Nappi's monthly breakdown, by supplier and brand, of units sold to a client from 2018 to 2020, including a version with handwritten gross sales totals, numbers of items sold, and other information on Nappi's margins, commissions, and incentives. … This sales data is limited to a single client … Nappi has not met the high bar of demonstrating harm from disclosure of this limited set of past sales data, particularly as it relates to Ms. Tourangeau's role at Nappi and her allegations. Nor has Nappi articulated why its competitors would gain an advantage from viewing these documents alone"); *Roy*, 2024 WL 1346478 at \*3 ("So far as the court is aware, the identity of a business, combined with information about how it compensated its employees usually would not qualify as a trade secret, nor would such information be likely to provide an unfair advantage to a competitor.").

   For the same reasons described in Defendants' Opposition to the Motion for Preliminary Injunction (ECF No. 20), Plaintiffs cannot show that the Documents at Issue are trade secrets, nor can she show that the information would provide a competitor with some economic advantage. A trade secret is "specified or specifiable information, whether or not fixed in tangible form or embodied in any tangible thing, including but not limited to a formula, pattern, compilation, program, device, method, technique, process, business strategy, customer list, invention, or scientific, technical, financial or customer data that (i) at the time of the alleged misappropriation, provided economic advantage, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, others who might obtain economic advantage from its acquisition, disclosure or use…" G.L. c. 93, § 42(4). None of the information sought to be impounded meets this definition. There is no customer information or

client list, no business plans or strategies, and certainly no special methods, infrastructure or data

that provides The Vault with any special tool that could be used against it if provided to a

competitor, especially given that much of the information is years' old – some dating back to

2019.[2]

While the Documents at Issue may include some limited information about the Vault, by

Plaintiffs' own admission that information is incomplete and does not include information on

what sets the business apart. Plaintiffs continue to conclude, without any explanation, that their

"various and detailed information provided to Defendants pursuant to the Agreements does

constitute trade secrets: The multi-year information and their compilation have independent

value in the exclusive Nantucket market," Reply, p. 8, seemingly hoping that if they say

something enough times, it will become true, despite the non-existence of support. Plaintiffs

make no showing of *how* this alleged information supposedly has such independent value or

provides any competitive advantage – because they cannot. *Compare RE/MAX of New England,*

*Inc.*, 2014 WL 3058295, at \*2-3 ("There are no trade secrets involved here. The plaintiffs' best

argument is that the defendants have the benefit of knowing RE/MAX general business

strategies"), *with Boulanger v. Dunkin Donuts*, 442 Mass. 635, 639 (2004) (court deemed

operating manuals, recipes, marketing and promotion strategies, new product development, and

the locations of sites for new stores, as trade secrets).

Because there are no trade secrets or business information that could actually be used by

a competitor in the documents Plaintiffs seek to broadly impound in their entirety – and Plaintiffs

---

[2]    It should also not be lost on the Court that most of the projections provided in the documents arise from *the non-existent merger of The Vault and Marissa Collections*. It strains credulity that Plaintiffs attempt to argue that this type of hopeful information is somehow a trade secret or confidential.

have themselves placed this information into the public eye in seeking the substantive and extraordinary remedy of permanently barring Marissa Collections from doing any business on Nantucket (and beyond) via their Motion for Preliminary Injunction – Plaintiffs are unable to overcome the strong presumption of public access and their request to wholly impound these documents and designate them as Attorneys' Eyes Only should be denied. As described above, it is clear that Plaintiffs' broad request to seal these documents is not sufficiently narrowly tailored, and should the Court deem it advisable, Defendants do not oppose a significantly more limited redaction, i.e., redaction of the exact dollar figures listed in the documents. *Bradford & Bigelow, Inc.*, 109 F. Supp. 3d at 449 ("[a party] … must ensure that any sealing is narrowly tailored to shield as little from public view as possible.").

Lastly, Plaintiffs' unilateral, self-serving, and unsupported by any authority designation of these documents as "Attorneys' Eyes Only" –  and their demand that the information *not even be shared with the Defendants* who they are seeking to prevent from conducting legitimate business – is unreasonable and prejudicial on its face and prevents Defendants from being able to defend themselves. Plaintiffs have repeatedly leveled false and defamatory accusations against Defendants, accusing them of "secretly scheming," or concocting a "bait and switch scheme[,]" *see. e.g.*, Verified Complaint, at ¶¶ 7, 10, 11, 54, 64, 66, or dramatically stating that Defendants misappropriated the "crown jewels of her business." *Id.* at ¶ 7. After doing so, Plaintiffs seek to hamstring Defendants in the defense of these baseless, defamatory accusations by shielding them and the public from the documents, and the truth that they reveal. Plaintiffs should not be able wield these documents as both sword and shield: to rely on the Documents at Issue while at the same time limiting Defendants' ability to defend themselves.

## IV.    Conclusion

For these reasons, and given the strong and long-held presumption that judicial

documents should not be unreasonably shielded from public access, Defendants respectfully

submit that Plaintiffs' Motion to broadly impound the documents attached as Exhibit A to the

Marini Declaration and designate those document as "Attorneys' Eyes Only" should be denied.


Respectfully Submitted,

BOUTIQUE TERE, INC. d/b/a MARISSA
COLLECTIONS, JAY HARTINGTON,
MARISSA HARTINGTON, and
BURT HARTINGTON,

By their Attorneys,

*/s/ Damien M. DiGiovanni*
Damien M. DiGiovanni (BBO No. 682005)
Jeffrey T. Collins (BBO No. 640371)
Brendan T. Sweeney (BBO No. No. 703992)
MORGAN, BROWN & JOY, LLP
28 State Street, 16th Floor
Boston, MA 02109-2605
(617) 523-6666
ddigiovanni@morganbrown.com
jcollins@morganbrown.com
Dated: June 13, 2025                bsweeney@morganbrown.com


## CERTIFICATE OF SERVICE

I, Brendan T. Sweeney, hereby certify that on June 13, 2025, a copy of the foregoing was
filed electronically. Notice of this filing will be sent by e-mail to all parties of record by
operation of the Court's electronic filing system. Parties may access this filing through the
Court's system.


*/s/ Brendan T. Sweeney*
Brendan T.  Sweeney