**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| KATHERINE JETTER, and<br>KATHERINE JETTER LTD. d/b/a THE<br>VAULT NANTUCKET,<br><br>Plaintiffs,<br><br>v.<br><br>BOUTIQUE TERE, INC. d/b/a MARISSA<br>COLLECTIONS, JAY HARTINGTON,<br>MARISSA HARTINGTON, and<br>BURT HARTINGTON<br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)    Civil Action No. 1:25-cv-11491-DJC<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**DEFENDANTS' ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFFS'**
**VERIFIED COMPLAINT AND COUNTERCLAIMS AGAINST PLAINTIFFS**
**KATHERINE JETTER AND KATHERINE JETTER LTD. d/b/a THE VAULT**
**<u>NANTUCKET</u>**

Defendants Boutique Tere, Inc. d/b/a Marissa Collections, Jay Hartington, Marissa

Hartington, and Burt Hartington (collectively, "Defendants") by and through their undersigned

counsel of record, hereby answer the allegations contained in the Plaintiffs, Katherine Jetter,

Katherine Jetter Ltd. d/b/a The Vault Nantucket's Verified Complaint and Jury Demand (the

"Complaint") as follows:

**<u>INTRODUCTION</u>**[1]

1) Defendants are without knowledge sufficient to form a response as to allegations

   contained in Paragraph 1 and therefore deny the same.

---

[1]    Defendants deny any allegation that may be drawn from the headings in the Complaint.
Defendants have reproduced the headings herein simply for convenience.

2)   Defendants admit that Ms. Jetter sells her own jewelry at The Vault. Defendants are without knowledge sufficient to form a response as to the remaining allegations contained in Paragraph 2 and therefore deny the same.

3)   Defendants admit the allegations in the first two sentences of Paragraph 3. Defendants deny the remaining allegations in Paragraph 3.

4)   Denied.

5)   Paragraph 5 purports to characterize the contents of various documents, which speak for themselves, such that no response is required from Defendants. To the extent a response is required, Defendants deny Plaintiffs' characterization. Defendants deny the remaining allegations in Paragraph 5.

6)   Denied.

7)   Denied.

8)   Denied.

9)   Denied.

10) Denied.

11) Paragraph 11 purports to characterize the contents of a partial social media post which is not presented in its entirety and what appears to be clip art from a partial Google map, which speak for themselves, such that no response is required from Defendants except that Plaintiffs' claim that Exhibits 3 and 4 are "true and accurate copies," is false. To the extent a response is required, Defendants deny Plaintiffs' characterization. To the extent that Paragraph 11 contains any factual allegations requiring a response, such allegations are denied.

12) Denied.

13) Paragraph 13 does not contain any factual allegations requiring a response. Defendants are without knowledge sufficient to form a response as to why Plaintiffs brought these baseless claims and therefore deny the same. Defendants deny that Plaintiffs are entitled to the relief sought in Paragraph 13. To the extent Paragraph 13 contains any factual allegations, they are denied.

## PARTIES

14) Defendants are without knowledge sufficient to form a response as to allegations contained in Paragraph 14 and therefore deny the same.

15) Defendants are without knowledge sufficient to form a response as to allegations contained in Paragraph 15 and therefore deny the same.

16) Defendants admit that Boutique Tere, Inc. does business as Marissa Collections, and that Marissa Collections' headquarters is located in Naples, Florida. Defendants admit Marissa Collections also does business in the Commonwealth.

17) Defendants admit Jay Hartington is the CEO and partial-owner of Marissa Collections and resides in Naples, Florida. Defendants admit Mr. Hartington also does business in the Commonwealth.

18) Defendants admit Marissa Hartington is an owner of Marissa Collections and resides in Naples, Florida. Defendants deny the remaining allegations in Paragraph 18.

19) Defendants admit Burt Hartington is an owner of Marissa Collections and resides in Naples, Florida. Defendants deny the remaining allegations in Paragraph 19.

## JURISDICTION AND VENUE

20) Paragraph 20 sets forth a legal conclusion to which no response is required. To the extent that Paragraph 20 contains any factual allegations requiring a response, such allegations are denied.

21) Paragraph 21 sets forth a legal conclusion to which no response is required. To the extent that Paragraph 21 contains any factual allegations requiring a response, such allegations are denied.

22) Paragraph 22 sets forth a legal conclusion to which no response is required. To the extent that Paragraph 22 contains any factual allegations requiring a response, Defendants are without knowledge sufficient to form a response as to allegations and therefore deny the same.

## STATEMENT OF FACTS

**I.      Katherine Jetter is a Designer and Retailer Who Founded Katherine Jetter Ltd. And The Vault on Nantucket.**

23) Defendants are without knowledge sufficient to form a response as to allegations contained in Paragraph 23 and therefore deny the same.

24) Defendants admit that The Vault sells Ms. Jetter's own jewelry line. Defendants are without knowledge sufficient to form a response as to allegations contained in the remainder of Paragraph 24 and therefore deny the same.

25) Defendants are without knowledge sufficient to form a response as to allegations contained in Paragraph 25 and therefore deny the same.

26) Defendants admit that it is general knowledge that the summer months are busier on Nantucket. Defendants are without knowledge sufficient to form a response as to the remaining allegations contained in Paragraph 26 and therefore deny the same.

27) Defendants are without knowledge sufficient to form a response as to allegations
contained in Paragraph 27 and therefore deny the same.

## II.    Marissa Collections is a Florida-Based Luxury Retailer and The Vault's Direct Competitor.

28) Defendants admit that Marissa Collections is a Florida-based company with stores in
Palm Beach and Naples, and that it conducts business online. It is unclear what Plaintiffs
are alleging with the word "similarly" relative to the remaining allegations and therefore
Defendants deny any comparison to The Vault and any comparison to the extent of the
products sold.

29) Defendants admit that in Florida, Marissa Collections hosts trunk shows and similar
events and sells jewelry. Defendants deny the allegations of Paragraph 29, to the extent
they are made in any comparison to The Vault or reference Marissa Collections' store on
Nantucket. Paragraph 29 otherwise purports to characterize the contents of various
incomplete social media posts, which speak for themselves, such that no response is
required from Defendants.

30) Defendants admit that Marissa Collections markets and sells jewelry, and that there is
some overlap in vendors and designers between Marissa Collections and The Vault.
Answering further, Defendants state that Paragraph 30 purports to characterize the
contents of various incomplete social media posts, which speak for themselves, such that
no response is required from Defendants. Defendants deny the remaining allegations in
Paragraph 30.

31) Paragraph 31 purports to characterize the contents of various websites and the Verified
Complaint itself, which speak for themselves, such that no response is required from
Defendants. To the extent a response is required, Defendants deny Plaintiffs'

characterization. Defendants deny the remaining allegations in Paragraph 31. Paragraph 31 also contains what appears to be a photo of a portion of an Article; Defendants deny any such characterization of such photo.

32) Defendants admit that jewelry sales account for more than half of Marissa Collections' revenue in its Florida stores. Defendants deny the remaining allegations and characterizations in Paragraph 32.

33) Paragraph 33 purports to characterize the contents of various incomplete social media posts, which speak for themselves, such that no response is required from Defendants. To the extent a response is required, Defendants deny Plaintiffs' characterization. Defendants deny the remaining allegations in Paragraph 33.

### III.    The Marissa Collections Parties Agreed to Not Compete With The Vault and To Protect The Vault Parties' Confidential Information In Exchange for Receipt of The Vault Parties' Proprietary Business Information.

34) Defendants admit that Ms. Jetter and Mr. Hartington have had a relationship for over ten years; and that Marissa Collections sold Ms. Jetter's jewelry line at its stores.

35) Defendants admit that Ms. Jetter approached them in 2023 about either trying to partner with Marissa Collections or to try and sell The Vault. Defendants deny the remaining allegations in Paragraph 35.

36) Denied.

37) Defendants are without knowledge sufficient to form a response as to allegations concerning Ms. Jetter's mental state contained in Paragraph 37 and therefore deny the same. Defendants deny any remaining allegations contained in Paragraph 37.

38) Paragraph 38 purports to characterize various documents which speak for themselves, such that no response is required from Defendants. To the extent a response is required,

Defendants deny Plaintiffs' characterization. Defendants deny the remaining allegations in Paragraph 38.

39) Paragraph 39 purports to characterize various documents which speak for themselves, such that no response is required from Defendants. To the extent a response is required, Defendants deny Plaintiffs' characterization. Defendants deny the remaining allegations in Paragraph 39.

40) Paragraph 40 purports to characterize various documents which speak for themselves, such that no response is required from Defendants. To the extent a response is required, Defendants deny Plaintiffs' characterization. Defendants deny the remaining allegations in Paragraph 40 except that Defendants admit that based on their longstanding relationship and that the documents were referred to by Ms. Jetter's as "NDAs," Jay Hartington signed the two documents created by Ms. Jetter referenced in Paragraph 40 without having an attorney review.

41) Denied.

42) Paragraph 42 purports to characterize various documents which speak for themselves, such that no response is required from Defendants. To the extent a response is required, Defendants deny Plaintiffs' characterization. Defendants deny the remaining allegations in Paragraph 42.

43) Paragraph 43 purports to characterize various documents which speak for themselves, such that no response is required from Defendants. To the extent a response is required, Defendants deny Plaintiffs' characterization. Defendants deny the remaining allegations in Paragraph 43.

44) Denied.

45) Defendants are without knowledge sufficient to form a response as to allegations concerning Ms. Jetter's mental state contained in Paragraph 45 and therefore deny the same. Defendants deny any remaining allegations contained in Paragraph 45.

46) Denied.

47) Defendants are without knowledge sufficient to form a response as to allegations concerning the allegations contained in Paragraph 47 and therefore deny the same.

48) Defendants are without knowledge sufficient to form a response as to allegations concerning the allegations contained in Paragraph 48 and therefore deny the same.

**IV.    Unbeknownst to The Vault Parties, The Hartingtons and Marissa Collections Were Working Behind the Scenes to Open Their Own, Competing Business Mere Blocks Away from The Vault on Nantucket.**

49) Denied.

50) Denied.

51) Denied.

52) Defendants are without knowledge sufficient to form a response as to allegations concerning Ms. Jetter's mental state contained in Paragraph 52 and therefore deny the same. Paragraph 52 otherwise purports to characterize documents which speak for themselves, such that no response is required from Defendants. Defendants deny any remaining allegations contained in Paragraph 52.

53) Denied.

54) Paragraph 54 purports to characterize the contents of a partial social media post which is not presented in its entirety, which speaks for itself, such that no response is required from Defendants. To the extent a response is required, Defendants deny Plaintiffs'

characterization. To the extent that Paragraph 54 contains any factual allegations requiring a response, such allegations are denied.

55) Denied.

56) Defendants admit they opened a store on Nantucket in June 2025. Defendants deny the remaining allegations in Paragraph 56.

57) Paragraph 57 purports to characterize the contents of a document, which speak for themselves, such that no response is required from Defendants. To the extent a response is required, Defendants deny Plaintiffs' characterization. Defendants deny the remaining allegations in Paragraph 57.

58) Defendants are without knowledge sufficient to form a response as to allegations contained in Paragraph 58 and therefore deny the same. Paragraph 58 similarly purports to characterize partial social media posts and websites, which speak for themselves, such that no response is required from Defendants. To the extent a response is required, Defendants deny Plaintiffs' characterization. Defendants deny the remaining allegations in Paragraph 58.

59) Denied.

60) Denied.

**V.    Marissa Collections Holds Hundreds of Thousands of Dollars' Worth of Plaintiffs' Inventory Hostage In an Effort to Intimidate Ms. Jetter and Tortiously and Unfairly Interfere With Her Business.**

61) Denied.

62) Defendants admit that Ms. Jetter sold jewelry at Marissa Collections through a consignment arrangement. Paragraph 62 purports to characterize the contents of various webpages, which speak for themselves, such that no response is required from

Defendants. To the extent a response is required, Defendants deny Plaintiffs' characterization.

63) Defendants admit that Ms. Jetter continues to possess $40,000 of Defendants' money. Defendants otherwise deny the allegations contained in Paragraph 63.

64) Denied.

65) Paragraph 65 purports to characterize the contents of various webpages, which speak for themselves, such that no response is required from Defendants. To the extent a response is required, Defendants deny Plaintiffs' characterization. To the extent that Paragraph 65 contains any factual allegations requiring a response, such allegations are denied.

66) Paragraph 66 purports to characterize the contents of various webpages, which speak for themselves, such that no response is required from Defendants. To the extent a response is required, Defendants deny Plaintiffs' characterization. Defendants admit that Marissa Collections is not currently selling Ms. Jetter's jewelry. Answering further, when Ms. Jetter chose to terminate her relationship with Marissa Collections, the latter offered to process the return of the inventory in exchange for the deposit, payment of dues owed, and reimbursement of marketing expenses incurred due to Jetter's cancellation of a trunk show in Naples. Jetter rejected this reasonable offer. To the extent that Paragraph 66 contains any further factual allegations requiring a response, such allegations are denied.

67) Denied.

68) Paragraph 68 does not contain any factual allegations requiring a response. Defendants deny that Plaintiffs are entitled to the relief sought in Paragraph 68. To the extent Paragraph 68 contains any factual allegations, they are denied.

69) Paragraph 69 does not contain any factual allegations requiring a response. Defendants deny that Plaintiffs are entitled to the relief sought in Paragraph 69. To the extent Paragraph 69 contains any factual allegations, they are denied.

## COUNT I

### BREACH OF CONTRACT – NON-COMPETITION

70) Defendants repeat and re-allege their responses to the above paragraphs as if each were set forth in Paragraph 70 in their entirety.

71) Paragraph 71 sets forth a legal conclusion to which no response is required. To the extent that Paragraph 71 contains any factual allegations requiring a response, such allegations are denied.

72) Denied.

73) Paragraph 73 purports to characterize the contents of a document, which speaks for itself, such that no response is required from Defendants. To the extent a response is required, Defendants deny Plaintiffs' characterization. To the extent that Paragraph 73 contains any factual allegations requiring a response, such allegations are denied.

74) Denied.

75) Denied.

## COUNT II

### BREACH OF CONTRACT – CONFIDENTIALITY

76) Defendants repeat and re-allege their responses to the above paragraphs as if each were set forth in Paragraph 76 in their entirety.

77) Paragraph 77 sets forth a legal conclusion to which no response is required. To the extent that Paragraph 77 contains any factual allegations requiring a response, such allegations are denied.

78) Denied.

79) Paragraph 79 purports to characterize the contents of a document, which speaks for itself, such that no response is required from Defendants. To the extent a response is required, Defendants deny Plaintiffs' characterization. To the extent that Paragraph 79 contains any factual allegations requiring a response, such allegations are denied.

80) Denied.

81) Denied.

## COUNT III

### BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

82) Defendants repeat and re-allege their responses to the above paragraphs as if each were set forth in Paragraph 82 in their entirety.

83) Paragraph 83 sets forth a legal conclusion to which no response is required. To the extent that Paragraph 83 contains any factual allegations requiring a response, such allegations are denied.

84) Paragraph 84 sets forth a legal conclusion to which no response is required. To the extent that Paragraph 84 contains any factual allegations requiring a response, such allegations are denied.

85) Denied.

86) Denied.

## COUNT IV

## TORTIOUS INTERFERENCE

87) Defendants repeat and re-allege their responses to the above paragraphs as if each were set forth in Paragraph 87 in their entirety.

88) Denied.

89) Denied.

90) Denied.

## COUNT V

## UNFAIR AND DECEPTIVE TRADE PRACTICES IN VIOLATION OF M.G.L. c. 93A

91) Defendants repeat and re-allege their responses to the above paragraphs as if each were set forth in Paragraph 91 in their entirety.

92) Paragraph 92 sets forth a legal conclusion to which no response is required. To the extent that Paragraph 92 contains any factual allegations requiring a response, such allegations are denied.

93) Denied.

94) Denied.

95) Denied.

96) Denied.

97) Denied.

## COUNT VI

## MISAPPROPRIATION OF TRADE SECRETS
## IN VIOLATION OF M.G.L. C. 93, §§ 42-42G

98) Defendants repeat and re-allege their responses to the above paragraphs as if each were set forth in Paragraph 98 in their entirety.

99) Denied.

100)     Paragraph 100 sets forth a legal conclusion to which no response is required. To the extent that Paragraph 100 contains any factual allegations requiring a response, such allegations are denied.

101)     Defendants are without knowledge sufficient to form a response as to allegations contained in Paragraph 101 and therefore deny the same.

102)     Denied.

103)     Denied.

104)     Denied.

105)     Denied.

## COUNT VII

## MISAPPROPRIATION OF CONFIDENTIAL BUSINESS INFORMATION

106)     Defendants repeat and re-allege their responses to the above paragraphs as if each were set forth in Paragraph 106 in their entirety.

107)     Denied.

108)     Defendants are without knowledge sufficient to form a response as to allegations contained in Paragraph 108 and therefore deny the same.

109)     Denied.

110)     Denied.

## COUNT VIII

## CONVERSION

111)     Defendants repeat and re-allege their responses to the above paragraphs as if each were set forth in Paragraph 111 in their entirety.

112)     Denied.

113)     Denied.

114)     Defendants admit that Ms. Jetter had a consignment arrangement with Marissa

Collections. To the extent that Paragraph 114 contains any further factual allegations or

characterizations requiring a response, such allegations are denied.

115)     Denied. Answering further, when Ms. Jetter chose to terminate her relationship

with Marissa Collections, the latter offered to process the return of the inventory in

exchange for the deposit, payment of dues owed, and reimbursement of marketing

expenses incurred due to Jetter's cancellation of a trunk show in Naples. Jetter rejected

this reasonable offer.

116)     Paragraph 116 sets forth a legal conclusion to which no response is required. To

the extent that Paragraph 116 contains any factual allegations requiring a response, such

allegations are denied.

117)     Denied.

## COUNT IX

### UNJUST ENRICHMENT

118)     Defendants repeat and re-allege their responses to the above paragraphs as if each

were set forth in Paragraph 118 in their entirety.

119)     Denied.

120)     Denied.

121)     Denied.

## COUNT X

### DECLARATORY JUDGMENT

122)    Defendants repeat and re-allege their responses to the above paragraphs as if each were set forth in Paragraph 122 in their entirety.

123)    Paragraph 123 sets forth a legal conclusion to which no response is required. To the extent that Paragraph 123 contains any factual allegations requiring a response, such allegations are denied.

124)    Defendants are without knowledge sufficient to form a response as to allegations contained in the first sentence of Paragraph 124 and therefore deny the same. Answering further, Defendants deny that the purported document referred to in Paragraph 124 is entitled "2024 Confidentiality & Non-Compete Agreement." Defendants deny that the document referred to in Paragraph 124 is valid or enforceable.

125)    Paragraph 125 sets forth a legal conclusion to which no response is required. To the extent that Paragraph 125 contains any factual allegations requiring a response, such allegations are denied.

126)    Denied.

### REQUESTED RELIEF

127)    Paragraph 127 does not contain any factual allegations requiring a response. Defendants deny that Plaintiffs are entitled to the relief sought in Paragraph 127. To the extent Paragraph 127 contains any factual allegations, they are denied.

128)    Paragraph 128 does not contain any factual allegations requiring a response. Defendants deny that Plaintiffs are entitled to the relief sought in Paragraph 128. To the extent Paragraph 128 contains any factual allegations, they are denied.

129)       Paragraph 129 does not contain any factual allegations requiring a response. Defendants deny that Plaintiffs are entitled to the relief sought in Paragraph 129. To the extent Paragraph 129 contains any factual allegations, they are denied.

130)       Paragraph 130 does not contain any factual allegations requiring a response. Defendants deny that Plaintiffs are entitled to the relief sought in Paragraph 130. To the extent Paragraph 130 contains any factual allegations, they are denied.

131)       Paragraph 131 does not contain any factual allegations requiring a response. Defendants deny that Plaintiffs are entitled to the relief sought in Paragraph 131. To the extent Paragraph 131 contains any factual allegations, they are denied.

132)       Paragraph 132 does not contain any factual allegations requiring a response. Defendants deny that Plaintiffs are entitled to the relief sought in Paragraph 132. To the extent Paragraph 132 contains any factual allegations, they are denied.

<u>**JURY TRIAL AND DEMAND**</u>

133)       Paragraph 133 does not contain any factual allegations requiring a response. Defendants deny that Plaintiffs are entitled to the relief sought in Paragraph 133. To the extent Paragraph 133 contains any factual allegations, they are denied.

<u>**AFFIRMATIVE AND OTHER DEFENSES**</u>

<u>**FIRST AFFIRMATIVE DEFENSE**</u>

Plaintiffs' Complaint and each of their causes of action fail to state a claim against Defendants upon which relief can be granted.

## SECOND AFFIRMATIVE DEFENSE

Upon information and belief, Plaintiffs engaged in conduct and activities sufficient to constitute waiver of the claims and causes of action set forth in their Complaint, so as to therefore bar any relief or recovery against Defendants.

## THIRD AFFIRMATIVE DEFENSE

Plaintiffs have not suffered and will suffer no damages as a direct result of Defendants' alleged actions.

## FOURTH AFFIRMATIVE DEFENSE

To the extent Plaintiffs have suffered any damages as a result of any action by Defendants, their recovery, if any, should be set off, diminished or defeated by Plaintiffs' failure to take reasonable steps to prevent or mitigate their damages.

## FIFTH AFFIRMATIVE DEFENSE

To the extent Plaintiffs have suffered any damages as a result of any action by Defendants, their recovery, if any, is limited to those remedies and those amounts provided for by the relevant statute(s).

## SIXTH AFFIRMATIVE DEFENSE

Even if Plaintiffs have suffered damages, Plaintiffs' economic injuries or disappointed expectations are not the result of any violation by Defendants of any contractual, statutory, or common law duty owed to Plaintiffs. Therefore, Plaintiffs' claims are or may be barred, in whole or in part, under the doctrine of *damnum absque injuria*.

## SEVENTH AFFIRMATIVE DEFENSE

Plaintiffs' Complaint fails to state a claim for actual, special, exemplary, liquidated, and/or compensatory damages.

## EIGHTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are or may be barred, in whole or in part, by the doctrine of equitable estoppel.

## NINTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are or may be barred, in whole or in part, by the doctrine of unclean hands, and their alleged damages, if any, were proximately caused by their own conduct; as such, recovery is barred or should be reduced proportionately.

## TENTH AFFIRMATIVE DEFENSE

In the event other parties are added, or it is shown that other parties should be added so as to provide complete relief under the facts, Defendants reserve the right to amend this Answer and set forth appropriate defenses, claims, set-offs, and counterclaims sufficient to protect its interests in this matter.

## ELEVENTH AFFIRMATIVE DEFENSE

Plaintiffs' claims and/or requested relief are barred because Defendants acted in good faith and reasonably believed that their actions complied with all applicable laws and regulations.

## TWELFTH AFFIRMATIVE DEFENSE

The allegations in the Complaint fail to state a claim for attorneys' fees and costs against Defendants.

## THIRTEENTH AFFIRMATIVE DEFENSE

The allegations in the Complaint fail to state a claim for pre-judgment interest against Defendants.

### FOURTEENTH AFFIRMATIVE DEFENSE

The allegations in the Complaint fail to state a claim for any damages or penalties against Defendants.

### FIFTEENTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred in whole or in part by the doctrine of laches because Plaintiffs' delay in pursuing their alleged claims is unreasonable and prejudices Defendants.

### SIXTEENTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred by the doctrine of estoppel, offset and/or setoff.

### SEVENTEENTH AFFIRMATIVE DEFENSE

Plaintiffs' claim under the Massachusetts Trade Secrets Act is barred, in whole or in part, because Plaintiffs have advanced its claim of misappropriation in bad faith in violation of the Massachusetts Trade Secrets Act, thereby entitling Defendants to an award of reasonable attorneys' fees pursuant to Mass. Gen. Laws c. 93, § 42C.

### EIGHTEENTH AFFIRMATIVE DEFENSE

Plaintiffs' breach of contract claim is barred because the parties never formed a contract.

### NINETEENTH AFFIRMATIVE DEFENSE

Plaintiffs' breach of contract claim fails because Defendants did not breach any contractual duty owed to the Plaintiffs.

### TWENTIETH AFFIRMATIVE DEFENSE

Defendants were excused from performing the terms of the contract, if any, due to Plaintiffs' failure to perform.

## TWENTY-FIRST AFFIRMATIVE DEFENSE

The Plaintiffs' claim for breach of contract is barred because Plaintiffs failed to comply with the terms and conditions of the alleged contract.

## TWENTY-SECOND AFFIRMATIVE DEFENSE

Plaintiffs' breach of contract claim is barred because Plaintiffs breached a material term of the alleged contract and Defendants' performance under the alleged contract is therefore excused.

## TWENTY-THIRD AFFIRMATIVE DEFENSE

Plaintiffs' breach of contract claim is barred in whole, in that the object of the alleged contract is illegal.

## TWENTY-FOURTH AFFIRMATIVE DEFENSE

Defendants state that if there was ever an obligation between Defendants and Plaintiffs based on contract, that by reasons of the conduct of the Plaintiff the contract, if any, should be rescinded.

## TWENTY-FIFTH AFFIRMATIVE DEFENSE

Plaintiff's' claims are barred by the doctrine of unjust enrichment.

## TWENTY-SIXTH AFFIRMATIVE DEFENSE

The alleged contract Plaintiffs are attempting to enforce is invalid for insufficient consideration.

## TWENTY-SEVENTH AFFIRMATIVE DEFENSE

Plaintiffs' claim under G.L. c. 93A is barred because they failed to send a legally adequate demand letter at least thirty days before commencing suit.

## TWENTY-EIGHTH AFFIRMATIVE DEFENSE

Defendants did not engage in any unfair or deceptive acts or practices and therefore Plaintiffs are precluded from recovery pursuant to the terms of G.L. c. 93A.

## TWENTY-NINTH AFFIRMATIVE DEFENSE

Defendants have in fact effectuated prompt, fair and equitable settlement negotiations and therefore Plaintiffs are precluded from recovery pursuant to the terms of G.L. c. 93A.

## THIRTIETH AFFIRMATIVE DEFENSE

Plaintiffs have failed to comply with the provisions of G.L. c. 93A and thus are precluded from recovery pursuant to the provisions of said statute.

## RESERVATION OF RIGHTS

Defendants reserve the right to amend this Answer and to assert additional affirmative defenses and other defenses as may become known or appear applicable during the course of this litigation.

## COUNTERCLAIMS

### Introduction

1.      Boutique Tere, Inc., d/b/a Marissa Collections ("Marissa Collections"), Jay Hartington, Marissa Hartington, and Burt Hartington (collectively, "Counterclaim Plaintiffs") bring this action against Katherine Jetter and Katherine Jetter Ltd. d/b/a The Vault Nantucket ("The Vault") (collectively, "Counterclaim Defendants"). Counterclaim Plaintiffs first seek declaratory relief under the Federal Declaratory Judgement Act, 28 U.S.C. § 2201 that: (1) the non-compete provision contained in the "One-Step Confidentiality and Warranty Agreement" dated on April 14, 2023,  and in the "One-Step Confidentiality and Warranty Agreement" dated on October 23, 2024, ("NDAs") drafted by Counterclaim Defendants is unenforceable; (2) that Ms. Jetter breached the terms of the NDA by failing to provide information to Marissa Collections and therefore the Agreement is void and unenforceable; and/or (3) Counterclaim Plaintiffs have not used any "confidential information" or "trade secrets" belonging to The Vault and thus did not violate the Massachusetts Uniform Trade Secrets Act ("MUTSA"), G.L. c. 93, §§ 42, 42A-42G. Counterclaim Plaintiffs additionally bring this action to request that the Court make them whole for Counterclaim Defendants' tortious efforts to interfere with Counterclaim Plaintiffs' opportunities and ability to do business on Nantucket, including their causing a third-party real estate company, NIR Retail, to cease doing business with Counterclaim Plaintiffs and withdraw a lease offer, based on Counterclaim Defendants' misrepresentations and threats regarding a clearly unenforceable non-compete clause hidden in the NDAs.

### Parties

2.      Marissa Collections is a corporation organized under the laws of Florida with a principal place of business in Naples, Florida.

23

3.      Jay Hartington is Marissa Collections' Chief Executive Officer ("CEO"). Jay

Hartington resides in Florida.

4.      Marissa Hartington is a part-owner of Marissa Collections. Marissa Hartington

resides in Florida.

5.      Burt Hartington is a part-owner of Marissa Collections. Burt Hartington resides in

Florida.

6.      Counterclaim Defendants have represented that Katherine Jetter Ltd. d/b/a The

Vault Nantucket is a Delaware Corporation with a principal place of business in Nantucket,

Massachusetts.

7.      Counterclaim Defendants have represented that Katherine Jetter is the owner and

CEO of The Vault, and that Ms. Jetter resides in Massachusetts.

## Jurisdiction & Venue

8.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a)

because there is complete diversity between the Parties and the amount in controversy exceeds

$75,000.

9.      This Court has supplemental jurisdiction of the Counterclaims pursuant to 28

U.S.C. § 1367, because the claims form part of the same case or controversy as the claims in the

underlying Complaint.

10.     This Court has personal jurisdiction over Counterclaim Defendants because they

consented to personal jurisdiction with the filing of the underlying Complaint.

11.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2), because a

substantial part of the events or omissions giving rise to the Counterclaims occurred in the

District.

24

**Facts in Support of Counterclaims**

**A. Marissa Collections**

12.     Marissa Collections is a family-owned business, and has operated continuously since 1975. Marissa Collections is led by its CEO, Jay Hartington.

13.     Marissa Collections currently has brick and mortar stores in Naples and Palm Beach, Florida, as well as Nantucket, Massachusetts and it has clientele, and has conducted business, all over the world.

14.     Marissa Collections has an extensive catalogue. Marissa Collections sells fine jewelry, fashion jewelry, clothes – both men's (pants, jackets, blazers, shorts, shirts, swimwear) and women's (dresses, pants, shorts, tops, swimwear, skirts, jackets and coats), bags, clutches, wallets, shoes, watches, belts, hats, sunglasses, and beauty products, among other things.

15.     While Marissa Collections has consignment agreements with many vendors, it also own millions of dollars' worth of inventory.

16.     Marissa Collections has a unique compensation model for its sales team – which are referred to as "Stylists" – providing them with 8.5% commission for the entire purchase price, regardless of the level. This has been in place for years. Marissa Collections' Stylists are long-time, year round employees. A large part of their job is staying in constant contact with clients and providing them with updates on inventory and new styles, regardless of where they are located.

**B. Relationship With Katherine Jetter and The Vault**

17.     In 2014, Ms. Jetter became a vendor for Marissa Collections; meaning, she would supply her products to Marissa Collections to be sold at Marissa Collections' stores in Florida.

18.     As part of this arrangement, Ms. Jetter agreed to Marissa Collections' "Fine

Jewelry Guidelines," which required her to provide the following information to Marissa

Collections: style numbers, color codes, material, carat weights, stone origins, sizing,

dimensions, mark-up, cost, retail, high resolution images, appraisals for items over $7,000 and/or

one-of-a-kind pieces.

19.     Ms. Jetter did not sell anything else besides jewelry.

20.     Frequently over the years, Ms. Jetter would contact Mr. Hartington to seek advice

about the industry, sales, employee relations and general business advice, either in person or via

text/email.

21.     Ms. Jetter would often ask Mr. Hartington about how Marissa Collections

compensated its employees.

22.     When Ms. Jetter opened her store, she mimicked Marissa Collections' display

case set up – which was more of an open concept than jewelers typically use – where the stylist

would stand next to the client, as opposed to the other side of the display case. She observed this

style while working in Marissa Collections' Florida locations.

23.     Outside of her own brand jewelry, Ms. Jetter does not own any other jewelry or

have any of her own inventory.

24.     Further, Ms. Jetter only operates The Vault during the summer (and surrounding

months), which Mr. Hartington is aware of from speaking to her over the years and speaking to

other business owners in the area. Additionally, it is easily discernible simply by reviewing her

website and public posts on Instagram. Understanding the summer sales cycle and associated

market conditions on Nantucket was something Mr. Hartington understood quite well and was

not a secret maintained by The Vault.

25.     Through his communications and collaborations with Ms. Jetter over the years,

Mr. Hartington learned that The Vault only has one full-time employee and relies upon seasonal help during the summer. Ms. Jetter pays those employees hourly and splits commissions with them. Through Mr. Hartington's communications and collaborations with Ms. Jetter over the years, Mr. Hartington learned generally about The Vault's compensation and commission structure for its employees. This compensation structure was never one that Marissa Collections would consider implementing, given its success with the above-described Stylists.

### C. Business Dealings on Nantucket Prior to April 2023

26.    Marissa Collections has long engaged with clients on Nantucket. Marissa Collections' first shipment there occurred a dozen years ago, in 2013, and Marissa Collections has continued to grow its presence and sell to clientele in the Nantucket market since then. Marissa Collections has served over 60 clients from and on Nantucket and has sold more than $2,000,000 worth of merchandise.

27.    One of the ways Marissa Collections stays connected to its Nantucket clients is through its dedicated Stylists, who send curated items to clients on Nantucket. The clients can try everything on, and if they decide to keep anything, Marissa Collections processes the charge at that point. If the client does not purchase, Marissa Collections provides a return label so they can easily send it back.

28.    Many of Marissa Collections' clients in Florida similarly spend time on Nantucket during the Nantucket selling season which, as Mr. Hartington is acutely aware – due to his experience, his having clientele on the island and, basic common understanding that Nantucket is a summer beach community –  takes place between May and October. As a result of Marissa Collections' connection to clients on the island, several of whom requested that Marissa Collections come to Nantucket, in July 2022, it hosted a Fashion Show and Pop Up at the

Westmoor Club on Nantucket, which is located within a mile of the "commercial downtown" district on the island.

29.     Given the anticipated large turnout and significant amount of merchandise Marissa Collections brought to the event, Marissa Collections had eight of its employees travel to Nantucket and work at the event, including models and client representatives.

30.     The Show on Nantucket was a complete success. More than 150 members and guests attended, and after the three-hour show, Marissa Collections sold over $50,000 of products, directly to Nantucket attendees during the event.

31.     Ms. Jetter attended the Show and witnessed the high turnout.

32.     As a result of the Show's success, Marissa Collections' nearly 10 years of experience selling to clientele on Nantucket at the time, and due to the significant overlap between Marissa Collections' clients in Naples/Palm Beach and Nantucket, Marissa Collections began exploring, in 2022, opening a store on the island and undertook steps to connect with a local real estate agent with knowledge of the island and advice on the best places to buy or lease to operate a store.

33.     In early August, 2022, Mr. Hartington was introduced, via email, to the Executive Vice President of Leasing at New England Development, Carol Carbonaro, by Doscher Hobler, Director of Leasing for WS Development, who also attended the Westmoor Show:

> Please meet Jay, CEO of Marissa Collections. Jay, please meet Carol, EVP of Leasing at New England Development. **I saw firsthand the ladies come out with excitement to shop the Marissa Collections event at the Westmoor Club**. With overlap from Naples and Palm Beach, **Jay set forth this event in response to endless requests from clients to have a Nantucket presence**. **The one week pop up gave him a taste of the charm and energy of Nantucket giving way to curiosity of opportunities next summer**. Although, selfishly, I would love to stay apart of this conversation, I will let you two take it from here.

34.     In response, Ms. Carbonaro informed Mr. Hartington that her company, New England Development, "is very active on Nantucket Island with downtown real estate, hotels, marina's, etc."

35.     Ms. Carbonaro similarly introduced Mr. Hartington to Henry Wyner, the Director of NIR Retail in August, 2022, and Mr. Hartington and Mr. Wyner connected for a meeting the following week.

36.     Based on Mr. Hartington's experience on the island, it was and remains his understanding that the only significant retail area on Nantucket is located "downtown," where the ferry lands. During the pendency of Mr. Hartington's relationship with Mr. Wyner, *all* of the properties he showed to Mr. Hartington were in the same general proximity as The Vault – which is where the large majority of the retail shops are located on the island.

37.     In February 2023, shortly after the initial introduction, Mr. Wyner contacted Mr. Hartington to discuss a property at 4 Federal Street on Nantucket. Marissa Collections expressed interest at the time but ultimately passed on that particular property because it was too small.

**D.  Plaintiff Jetter's Attempt to Form a Business Relationship with Marissa Collections and the Circumstances Giving Rise to the Non-Disclosure Agreements**

38.     Around this time (late winter/early spring 2023), Ms. Jetter, who was aware that Marissa Collections was actively looking for retail space on Nantucket, communicated with Mr. Hartington to set up a meeting to discuss a potential partnership or, what Mr. Hartington understood was her preference, for Marissa Collections to purchase The Vault.

39.     Ms. Jetter confirmed in writing that she approached Mr. Hartington about either selling her business to Marissa Collections or exploring a partnership ("The reason I initially

approached you with the idea of a) either selling to you or b) exploring a partnership was rooted in my belief that we share a strong alignment in values, principles, and how we conduct business." Marissa Collections did not reach out to her about a business deal, nor did Marissa Collections need her to provide information about the Nantucket market as Marissa Collections had clients living there, had been conducting business there, and had already formed relationships with local real estate professionals who had intimate and specific knowledge of the market.

40.    Several months after Ms. Jetter contacted Mr. Hartington, seeking to enter some type of business transaction with Marissa Collections, she asked if he would come to Boston to meet with her business advisor.

41.    Prior to the meeting, Ms. Jetter sent Mr. Hartington an email entitled, "NDA PDF The Vault 4-12-23.pdf."

42.    Ms. Jetter did not mention the limitless non-compete sentence added at the bottom of the page, nor were there any discussions about any proposed changes or advice from counsel (and there was no such warning within the document).

43.    Within the email, Ms. Jetter stated in part, "Please see attached and let me know if you have any questions, don't worry about the form part at the bottom. That's not really relevant". Given their longstanding personal and professional relationship, the title of the document being "NDA," and Ms. Jetter's nonchalant description of the document, Mr. Hartington assumed it was a standard NDA (which does not include a non-compete provision) and signed it. Mr. Hartington did not consult with counsel or have counsel review it before doing so.

44.    A year and a half later, Ms. Jetter contacted Mr. Hartington again via email

entitled "NDA," and asked, "[c]an I be super annoying and ask you to sign this new NDA between just us? The old one was between Erin (the old broker) and her company, BayState[.]" Again, without seeking advice from counsel, and for the same reasons explained above, Mr. Hartington signed what appeared to him to be a simple and standard NDA.

45.     During the entire period between April 2023 and January 2025 (and since then), Marissa Collections has continued to sell to clients on Nantucket. During that time, as throughout previous years, Marissa Collections' business has grown, and it has continued to do business on Nantucket, including opening a store in June 2025.

**E. Information Provided by Plaintiffs**

46.     During the time Ms. Jetter and Mr. Hartington were exploring a potential merger or acquisition, she did not provide any information that gives her business a competitive advantage over other businesses. To Mr. Hartington's knowledge, she sells her products in her stores and through her website (or at pop-ups out of state, like she did in Florida with Marissa Collections). Mr. Hartington was aware of these facts long before April 2023.

47.     Ms. Jetter did not provide any business plans or marketing strategies to Marissa Collections. She provided un-audited, basic information and her own, unsubstantiated projections in the context of trying to have Marissa Collections buy The Vault and negotiating a higher purchase price. Ms. Jetter did not provide any of her customer information or client lists. Ms. Jetter did not provide any proprietary or unique information that is not widely available, as she does not have any such information that is unique to her business.

48.     Instead, the totality of the information she provided was a handful of Excel spreadsheets that she created and that were not audited or otherwise verified; a business valuation that she created while trying to drive the price up of The Vault, and was not otherwise

completed by an industry professional; basic and general information about The Vault, including things like confirming she has insurance; and, a limited list of website sales she made during a limited window. Additionally, despite the fact she provided only a limited amount of information, Ms. Jetter repeatedly altered such information and explanations when faced with very basic inquiries about The Vault. For example, in October 2024, she provided the salary of her one employee as being a certain amount. Only a few months later, she informed Marissa Collections her salary was actually 2X.

49.    As a result of Ms. Jetter failing to provide Marissa Collections with trustworthy information and her changing the information she was providing, Marissa Collections asked her repeatedly to provide audited financial statements or, any type of verified financial statement confirming some of the numbers in the limited documents she provided. Marissa Collections did this only because it was necessary for exploring whether a merger or acquisition was feasible or desirable. Ms. Jetter refused to provide this information.

50.    In October 2024, Marissa Collections' Controller Hanen Owada, sent Ms. Jetter a series of questions about her business so that Marissa Collections could continue to evaluate a potential deal. Ms. Jetter refused to provide the information, stating that she was not going to provide the information until the parties had a "reasonable range of valuation[,]" and further stated that, "the ball is in your court, we are happy to send this material as long as we have a reasonable range of valuation." Mr. Hartington understood this to be related to her desired sale price for The Vault.

51.    In January 2025, Mr. Hartington raised concerns with Ms. Jetter and her husband, CJ Brucato, who became involved in the discussions as an agent for Ms. Jetter and The Vault, that some of the financial information in her self-created Excel spreadsheet was inaccurate. Mr.

Hartington reiterated to them that there remained important unanswered questions about her business and offered a reasonable solution to quell Marissa Collections' concerns:

> Hanen and I sent detailed questions regarding financials and business structure on October 29th. The lack of answers is the basis of our comments. It is challenging to agree on ballpark numbers without audited financials or answers to the operational questions regarding the desired assets.

52.    In response to this email, Ms. Jetter admitted she had not provided Marissa Collections with all of the information regarding her business, which was a violation of the provision of the NDA requiring that she furnish such information, and that the information she previously provided was not substantiated (despite her allegations in this lawsuit that she has disclosed the "crown jewels" of her business).

> I have had all the of the information you and Hanen requested fully prepared, since your email request in October, but we do need to have a ball park agreement in place before we go all the way with opening every detail of my books to you. The information requested would be to substantiate the information we have already provided.

53.    After this email exchange, Ms. Jetter provided written responses to some of the questions Marissa Collections posed to her several months earlier but, again, she informed Marissa Collections that the only way she was going to provide any supporting documentation depended on "if we work through things in the coming days."

54.    Ms. Jetter similarly confirmed that even the unverified information she had provided was incomplete. On January 10, she stated in an email that she had not actually provided complete data with regard to her revenues and profit margins: "If our discussions continue to progress, then we can provide revenue and gross profit for every item sold in 2024.".

55.    It became very clear at this point that, despite her obligations under the purported NDA agreement, Ms. Jetter failed to furnish the information to which she agreed to provide,

which was her obligation under the NDA.

56.     In addition to her failure to provide requested information about The Vault, Ms. Jetter actually told Mr. Hartington which Marissa Collections employees she wanted to have come to Nantucket and work at The Vault.

57.     Ms. Jetter's failure to engage in the process in good faith, including her admitted failure to provide complete and relevant information pursuant to the NDA, made it impossible for Marissa Collections to continue exploring a relationship with her.

58.     At no time did Mr. Hartington, or anyone associated with Marissa Collections, acquire information concerning The Vault through improper means or motive, nor did Mr. Hartington, or anyone associated with Marissa Collections, disclose any information concerning The Vault without Ms. Jetter's consent. At no time did Mr. Hartington, or anyone associated with Marissa Collections, use any information concerning The Vault for any reason whatsoever.

59.     The purported non-compete clause Ms. Jetter unilaterally included in the NDAs is unenforceable because Ms. Jetter's limited/incomplete provision of information in the context of exploring a merger and/or acquisition does not constitute sufficient consideration and/or a legitimate business justification for a limitless non-compete restriction, among other reasons outlined herein.

**F.  Ms. Jetter and the Vault Interfere with Marissa Collections' Advantageous Business Relations Based on a Plainly Unenforceable Non-Compete in an Effort to Improperly Prevent Marissa Collections from Conducting any Business on Nantucket**

60.     Separately, in or about early December 2024, Mr. Wyner of NIR Retail (again, who Mr. Hartington had a pre-existing relationship with), approached Mr. Hartington to discuss a property at 34 Main Street on Nantucket.

61.     Because negotiations with Ms. Jetter had stalled in light of Ms. Jetter's insistence

on Marissa Collections agreeing to a valuation of her business that she found to be acceptable before providing sufficient, complete and accurate information for Marissa Collections to evaluate a potential transaction with Ms. Jetter and The Vault, Mr. Hartington expressed interest in 34 Main Street.

62.     On or about December 10, 2024, Mr. Wyner sent to Marissa Collections a letter of intent for a five-year lease of the property at 34 Main Street to review.

63.     Shortly thereafter, on or about December 12, 2024, Mr. Hartington explained to Ms. Jetter that "I got a call from NIR Retail about a space that is going most likely to opening up. I guess the tenant is closing after decades of business. I'll let you know when i speak to them…."

64.     On or around January 1, 2025, Mr. Hartington reiterated his concerns with Ms. Jetter and Mr. Brucato regarding the inaccurate financial and business information they provided and his continued, remaining unanswered questions. Mr. Hartington further explained that given the status of negotiations, he had requested a letter of intent for the 34 Main Street property on behalf of Marissa Collections, but remained open to a collaboration, and proposed options for continuing to do so.

65.     On or about January 5, 2025, despite the plain unenforceability of the non-compete agreement, Ms. Jetter responded to Mr. Hartington stating, "Speaking to NIR about a lease without my involvement feels threatening and undermines the trust we've built. Similarly, suggesting that I could serve as a consultant or employee of MC is not aligned with the spirit of our earlier conversations." Ms. Jetter then admitted to Mr. Hartington that she made the "decision to inform relevant local parties" of the unenforceable non-compete agreement and then threatened that Marissa Collections cannot move forward with any further discussions with NIR about 34 Main Street, unless they include her. The "relevant local parties" Ms. Jetter referred to

included NIR Retail.

66.    Ms. Jetter and/or her agent(s) misrepresented to NIR Retail that Marissa Collections was subject to a limitless non-compete restriction that prevented Marissa Collections from ever conducting any business on Nantucket.

67.    Again, because Ms. Jetter's limited/incomplete provision of information in the context of exploring a merger and/or acquisition does not constitute sufficient consideration and/or a legitimate business justification for the limitless non-compete provision she included in the NDAs, it is unenforceable.

68.    Ms. Jetter was aware that the limitless non-compete provision she included in her NDAs was overbroad, that she did not provide the required information to Marissa Collections pursuant to the NDAs, that the provision had no legitimate business justification, and that the non-compete provision was unenforceable. Nevertheless, frustrated that her sought-after sale of The Vault was not materializing, Ms. Jetter improperly sought to use the non-compete provision as a business weapon to prevent Marissa Collections from acquiring a lease on Nantucket, and thereby to prevent Marissa Collections from doing any business on Nantucket. Specifically, Ms. Jetter engaged in unlawful self-help by interfering with Marissa Collections' business relationship with NIR.

69.    Notwithstanding Ms. Jetter's bad faith actions and that the non-compete is plainly unenforceable, as discussed above, Mr. Hartington continued to engage with Ms. Jetter to see if a deal might still be possible. Mr. Hartington again shared information with Ms. Jetter about the 34 Main Street property, provided Ms. Jetter with Mr. Wyner's contact information, and provided information about compensation of Marissa Collections' Stylists.

70.    Ms. Jetter thereafter contacted Mr. Wyner. Furthermore, Ms. Jetter stated to Mr.

Hartington that she would not "give permission on an LOI [letter of intent]" on 34 Main Street until Mr. Hartington had met her demanded purchase price. Mr. Wyner then informed Mr. Hartington that NIR Retail did not want to proceed for the potential of being dragged into litigation.

71.    Ms. Jetter claimed that Mr. Wyner had given an "extension" for the 34 Main Street property; however, as discussed above, despite her obligations under the purported NDA agreement, Ms. Jetter failed to furnish the information to which she agreed to provide, making it impossible for Marissa Collections to continue exploring a relationship with her.

72.    As a result, on or about January 13, 2025, Mr. Hartington informed Ms. Jetter that it would be "best to stop moving forward with the process [exploration of the merger]."

73.    Again, despite the plain unenforceability of the non-compete agreement, Ms. Jetter's failure to abide by the terms of the NDA, and that the Parties were no longer exploring a merger, Ms. Jetter continued to prevent Marissa Collections from securing a lease through NIR, in an improper attempt to prevent Marissa Collections from doing any business on Nantucket.

74.    As a result, on January 16, 2025, through counsel, Marissa Collections sent a letter to Ms. Jetter explaining that the non-compete agreement was unenforceable, and directing that Ms. Jetter cease interfering with Marissa Collections' business relationships with third parties, including NIR Retail.

75.    However, on January 17, 2025, Mr. Wyner withdrew the offer to lease 34 Main Street. "Jay- I want to inform you that NIR Retail will no longer continue negotiations with Marissa Collections to lease 34 Main Street, Nantucket and has offered the location to other retailers…"

76.    Mr. Wyner withdrew this offer as a result of Ms. Jetter falsely representing that

Marissa Collections was subject to a limitless non-compete restriction.

77.     Ms. Jetter's unlawful interference harmed Marissa Collections' business and economic opportunities. Specifically, Ms. Jetter's unlawful conduct prevented Marissa Collections from leasing their preferred property at 34 Main Street on Nantucket, preventing Marissa Collections and NIR from finalizing a five-year lease. Additionally, Ms. Jetter's intentional actions prevented Marissa Collections from being able to engage in any further negotiations or transactions with NIR – the predominant leasing agent on Nantucket – about other properties in their portfolio. With the loss of its preferred property at 34 Main Street, Marissa Collections was forced to enter a short-term lease for a much smaller space, in a less preferred location, much later in the season, which substantially harmed its business opportunity and, ultimately, its sales and profits.

## COUNT I – DECLARATORY RELIEF

78.     Counterclaim Plaintiffs incorporate by reference Paragraphs 1 through 77 of these Counterclaims as if restated in full.

79.     There is an actual controversy between Counterclaim Plaintiffs and Counterclaim Defendants that concerns as a material dispute whether: 1) the non-compete contained in the NDAs Counterclaim Defendants created is enforceable; 2) Counterclaim Defendants breached their obligations under the NDAs to provide information to Marissa Collections, thereby rendering the NDAs void and unenforceable; 3) Counterclaim Defendants at any time disclosed trade secrets as that term is defined by law; and (4) Counterclaim Plaintiffs misappropriated trade secrets or confidential business information belonging to Counterclaim Defendants.

80.     Counterclaim Defendants do not identify with reasonable particularity categories of information that would qualify as trade secrets pursuant to M.G.L. c. 93, § 42.

81.     Counterclaim Defendants do not plead with specificity or beyond conjecture how any Counterclaim Plaintiff misappropriated trade secrets or confidential business information.

82.     This dispute is ripe, because Counterclaim Defendants brought the underlying action against Counterclaim Plaintiffs that, in relevant part, seeks to enforce the non-compete provisions and alleges a violation of Massachusetts trade secrets statutes that require, *inter alia*, a showing that the information at issue constitutes trade secrets and that the trade secrets were misappropriated.

83.     Accordingly, Counterclaim Plaintiffs request that the Court exercise declaratory judgment and issue an order stating that Counterclaim Defendant's non-compete in the NDAs is not enforceable as a matter of fact and law, that Counterclaim Defendants breached their obligations under the NDA by failing to provide information to Marissa Collections, thereby rendering the NDA void and unenforceable, that Counterclaim Defendants did not at any time disclose trade secrets as that term is defined by law, and that Counterclaim Plaintiffs did not receive and/or misappropriate trade secrets or confidential business information of Counterclaim Defendants.

## COUNT II – TORTIOUS INTERFERENCE WITH CONTRACTUAL/ADVANTAGEOUS RELATIONS

84.     Counterclaim Plaintiffs incorporate by reference Paragraphs 1 through 83 of these Counterclaims as if restated in full.

85.     Marissa Collections and NIR Retail had an advantageous business relationship from which both parties benefited. Marissa Collections further had advantageous business relationships with its clients on Nantucket.

86.     Counterclaim Defendants were aware of Marissa Collections' advantageous business relationships.

87.    Counterclaim Defendants were aware that that the limitless non-compete provision included in Counterclaim Defendants' NDAs was overbroad, that they did not provide the required information to Marissa Collections pursuant to the NDAs, that the provision had no legitimate business justification, and that the non-compete provision was unenforceable.

88.    Through their actions pressuring Mr. Wyner of NIR Retail to cease doing business with Marissa Collections, seeking to use the unenforceable non-compete provision as a business weapon to prevent Marissa Collections from acquiring a lease on Nantucket, and thereby to prevent Marissa Collections from doing any business on Nantucket, Counterclaim Defendants intentionally interfered with Marissa Collections advantageous relationships with an improper purpose and improper means.

89.    Counterclaim Defendants unreasonably restrained and continue to seek to restrain Counterclaim Plaintiffs from doing business on Nantucket without a legal basis to do so.

90.    As a result of Counterclaim Defendants' actions, Counterclaim Plaintiffs have sustained and continue to sustain actual and consequential damages, including the loss of real estate and business opportunities, and lost sales and profits.

91.    Counterclaim Defendants' conduct was willful and malicious, and Counterclaim Plaintiffs are entitled to punitive damages.

**PRAYER FOR RELIEF**

WHEREFORE, having fully responded to Plaintiff's Verified Complaint and lodged its Counterclaims, Defendants/Counterclaim Plaintiffs respectfully request the following relief:

1. That the Court dismiss the Verified Complaint in its entirety with prejudice;

2. That the Court declare and order the following:

    a.   The non-compete provision of the NDA between the Parties is not enforceable as a matter of fact and law;

    b.   Counterclaim Defendants breached their obligations under the NDA to provide information to Marissa Collections, and therefore the Agreement is not enforceable;

    c.   The Vault has identified no trade secrets (as defined by MUTSA) misappropriated by Defendants/Counterclaim Plaintiffs;

    d.   No Defendants/Counterclaim Plaintiffs have misappropriated any The Vault trade secret or confidential information,

    e.   That Plaintiffs made a claim of misappropriation in bad faith; and/or,

    f.   The Plaintiffs filed a Motion to enter an injunction in bad faith.

3.   That Plaintiffs/Counterclaim Defendants tortuously interfered with Defendants'/Counterclaim Plaintiffs' advantageous business relationships in violation of the law, and, accordingly, Defendants'/Counterclaim Plaintiffs are entitled to actual and punitive damages for Plaintiffs'/Counterclaim Defendants' conduct; and

4.   That the Court award Defendants/Counterclaim Plaintiffs their reasonable attorneys' fees and costs incurred in connection herewith, and grant such other and further relief in support of Defendants/Counterclaim Plaintiffs as the Court deems just and proper.

### <u>DEMAND FOR JURY TRIAL</u>

Defendants/Counterclaim Plaintiffs hereby demand a trial by jury on all issues so triable.

Respectfully Submitted,

BOUTIQUE TERE, INC. d/b/a MARISSA
COLLECTIONS, JAY HARTINGTON,
MARISSA HARTINGTON, and
BURT HARTINGTON,

By their Attorneys,

*/s/ Damien M. DiGiovanni*
Damien M. DiGiovanni (BBO No. 682005)
Jeffrey T. Collins (BBO No. 640371)
Brendan T. Sweeney (BBO No. No. 703992)
MORGAN, BROWN & JOY, LLP
28 State Street, 16th Floor
Boston, MA 02109-2605
(617) 523-6666
ddigiovanni@morganbrown.com
jcollins@morganbrown.com
Dated: July 2, 2025                    bsweeney@morganbrown.com

## CERTIFICATE OF SERVICE

I, Brendan T. Sweeney, hereby certify that on July 2, 2025, a copy of the foregoing was filed electronically. Notice of this filing will be sent by e-mail to all parties of record by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ Brendan Sweeney
Brendan T. Sweeney